UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CRIMINAL ACTION NO. 5:23-cr-00009

UNITED STATES OF AMERICA                                                                 PLAINTIFF,

v.      **DEFENDANT MICHAEL BREGENZER'S RESPONSE IN OPPOSITION TO THE UNITED STATES' MOTION FOR PRELIMINARY JUDGMENT OF FORFEITURE FOR FORFEITURE MONEY JUDGMENT**

MICHAEL BREGENZER                                                                           DEFENDANT.

---

Defendant Michael Bregenzer ("Mr. Bregenzer"), by and through undersigned counsel, respectfully opposes the United States' Motion for Preliminary Judgment of Forfeiture seeking a personal forfeiture money judgment of $325,152.44. (R. 326.) The motion should be denied, or at minimum deferred pending an evidentiary hearing under Fed. R. Crim. P. 32.2(b)(1)(B).

**I.     Introduction**

The government seeks a $325,152.44 money judgment against Mr. Bregenzer by (i) identifying $812,881.09 in Medicare/Medicaid payments to Kentucky Addiction Centers ("KAC") associated with three CPT-code buckets, then (ii) multiplying that number by 40% based solely on Mr. Bregenzer's ownership interest. (R. 326, PageID.5657–58.) The government asserts that its claims data "establish[es]" the underlying claims were "falsely billed." (R. 326, PageID.5657.)

That showing is not enough under the governing statutes and Rule 32.2.

First, claims data is not proof of fraud. Claims data shows what was billed and what was paid. It does not establish that a particular service was not rendered, was not medically necessary, or was improperly coded—core elements of the government's fraud theory as to many claims. The government's motion treats CPT-code totals as if they were adjudicated fraud totals. That leap is unsupported.

The government's key "Ricardo-only" exhibit is expressly a demonstrative—not evidence. The government acknowledges that "GX 82a" was prepared "as a demonstrative exhibit" and emails defense counsel that it intended to use the subset "as a demonstrative." (R. 326, PageID.5657; R. 326-2, PageID.5663.) A demonstrative is not "evidence already in the record" for purposes of Rule 32.2(b)(1)(B), and the government presents no witness, declaration, or foundation to establish reliability.

Even if some proceeds were forfeitable, the government must still prove the amount Mr. Bregenzer himself "obtained" (or that is otherwise forfeitable against him), rather than assuming he received a pro rata share of gross receipts. The government offers no KAC financial records, distribution records, or tracing to show that Mr. Bregenzer personally obtained $325,152.44.

Because the amount turns on disputed factual issues—most importantly, whether the government's CPT-code selections are actually "proceeds traceable" to fraud and what (if anything) Mr. Bregenzer personally obtained—the Court should deny the motion or order a Rule 32.2(b)(1)(B) evidentiary forfeiture hearing.

## II.     The Government's Request and Supporting Materials

The motion requests money judgments of $155,520.00 for Dr. Alzadon and $325,152.44 for Mr. Bregenzer under 18 U.S.C. § 982(a)(7) and 21 U.S.C. § 853. (R. 326, PageID.5656–58.) (The motion's opening paragraph lists $155,522.00 for Dr. Alzadon, while the remainder of the

motion and the proposed order use $155,520.00. (R. 326, PageID.5655, 5658; R. 326-1, PageID.5660.))

As to Mr. Bregenzer, the government's proposed forfeiture "base" is $812,881.09, described as amounts KAC was "paid" for:

- 99214 office visits: $275,122.65;
- 99406 smoking cessation services: $166,962.92; and
- 99213 office visits attributed to Dr. Ricardo only: $370,795.52.

(R. 326, PageID.5657–58.)

The government then multiplies $812,881.09 by 40% based on alleged trial testimony about ownership and compensation and claims Mr. Bregenzer "therefore should be required to forfeit $325,152.44." (R. 326, PageID.5657–58.)

For the "Ricardo-only" 99213 figure, the government relies on "GX 82a," which it concedes was "prepared for trial as a demonstrative exhibit" derived from claims data, and which it attaches as Exhibit A. (R. 326, PageID.5658; R. 326-2, PageID.5663.) The email attached as part of Exhibit A confirms the government's intended use: "We intend to elicit testimony and use as a demonstrative this subset of the data that are in Exhibits 77a and 77b." (R. 326-2, PageID.5663.)

### III.  Governing Legal Standard

Rule 32.2 requires the Court to determine the amount of any money judgment and to do so based on evidence meeting the applicable standard of proof. Fed. R. Crim. P. 32.2(b)(1)(A), (b)(1)(B). The government itself recognizes that in the forfeiture phase it bears the burden to establish forfeitability by a preponderance of the evidence. (R. 326, PageID.5656.)

3

Critically, Rule 32.2(b)(1)(B) permits the Court to rely on evidence already in the record and/or "additional evidence or information submitted by the parties" that the Court accepts as "relevant and reliable." (R. 326, PageID.5656–57 (quoting and citing Rule 32.2(b)(1)(B))).

Statutorily, the government must also fit its proof to the forfeiture statutes it invokes:

1. For health care fraud, § 982(a)(7) reaches property "derived … from gross proceeds traceable" to the federal health care offense.

2. For drug offenses via § 853(a)(1), forfeiture is limited to proceeds "the person obtained" (and, under § 853(a)(2), facilitation property).

The key factual question is whether the amounts sought are the amounts "obtained by each of the Defendants." (R. 326, PageID.5657.)

IV.  ARGUMENT

A. **The Government Has Not Proven That the $812,881.09 Figure Represents "Gross Proceeds Traceable" to Fraud Rather Than Merely "Paid Claims in Certain CPT Buckets"**

The motion assumes that claim totals within certain CPT categories equal "fraud proceeds." That is not what the government proved at trial, and it is not what the attached materials show.

1. **Claims data does not prove falsity or medical necessity.**

The government repeatedly characterizes claims data as "establishing" that claims were "falsely billed." (R. 326, PageID.5657.) Claims data—by its nature—typically reflects: date of service, CPT/HCPCS code, provider identifiers, submitted amount, and paid amount. It does not contain the clinical documentation needed to determine medical necessity, the coding level supported by history/exam/medical decision-making (or time), or whether smoking-cessation counseling was actually provided and documented.

4

To conclude a claim is "false" because it bears a particular code (*e.g.*, 99214 or 99406) requires additional proof: patient records, testimony regarding what occurred, expert coding review, audit findings, statistically reliable sampling, or other evidence establishing falsity/medical-necessity failure for the claims included in the totals. The motion offers none of that claim-by-claim (or validated sampling) proof for the $812,881.09 figure.

### 2. The government did not prove at trial that every use of the referenced codes was fraudulent.

The government's theory, as reflected in its forfeiture motion, asks the Court to treat all 99214 payments and all 99406 payments (for "both Drs. Alzadon"), plus some 99213 payments (only "Dr. Ricardo"), as fraud proceeds. (R. 326, PageID.5657–58.) The motion does not identify which particular claims in those broad buckets correspond to the substantive fraud counts, nor does it identify trial proof establishing that every claim within each bucket was false.

That gap matters. A conspiracy conviction does not automatically establish that every claim in a multi-year universe sharing a CPT code was fraudulent. Forfeiture still requires a factual nexus between the amount sought and the offense conduct—proved by a preponderance with "relevant and reliable" evidence.

The motion's own "Ricardo-only" exhibit underscores the overbreadth problem. Exhibit A (the government's own demonstrative) shows, for Dr. Ricardo alone from October 1, 2017 to December 31, 2020, that the total paid for the three CPT codes is $441,815.86. (R. 326-2, PageID.5664.) Yet the government does not consistently apply a "Ricardo-only" approach: it uses Ricardo-only for 99213 (370,795.52) but uses both doctors' totals for 99214 and 99406 (275,122.65 + 166,962.92). (R. 326, PageID.5657–58.)

That internal inconsistency illustrates the core flaw: the government is not presenting a coherent, evidence-based method for identifying "proceeds traceable" to fraud. Instead, it mixes

5

and matches categories to arrive at a larger number without demonstrating that the entire set of included claims was false or medically unnecessary.

### B. The Government Cannot Base a Forfeiture Money Judgment on an Exhibit It Concedes Was a Demonstrative, Especially Where It Has Not Been Proven Reliable

Rule 32.2 allows reliance on record evidence and/or additional "relevant and reliable" evidence. The government's motion relies on "GX 82a" for the 99213 "Ricardo-only" paid amount of $370,795.52. (R. 326, PageID.5658.) But the motion simultaneously acknowledges GX 82a was "prepared for trial as a demonstrative exhibit." (R. 326, PageID.5658.) The attached email confirms that the government intended to "use as a demonstrative" a subset of data. (R. 326-2, PageID.5663.)

A demonstrative—particularly one not admitted as evidence—cannot simply be repurposed after trial to fix a forfeiture amount without (at minimum) authentication, methodology, and a showing of reliability. The motion offers no declaration from the preparer, no description of data-cleaning assumptions, no explanation of how duplicates/denials/adjustments were handled, and no link between the claims included in the totals and the fraud proven at trial.

If the government wishes to rely on post-trial summaries to support forfeiture, Rule 32.2's reliability requirement points toward the same remedy the rule explicitly contemplates: an evidentiary hearing where the government can present competent proof and the defense can test it.

### C. Even If Some Proceeds Were Forfeitable, the Government Has Not Proven Mr. Bregenzer "Obtained" $325,152.44

The government's final step is simply: "Bregenzer owned 40 percent of KAC, and therefore should be required to forfeit $325,152.44 ($812,881.09 x .4)." (R. 326, PageID.5657–58.)

6

That is not proof that Mr. Bregenzer personally obtained $325,152.44 in forfeitable proceeds.

Corporate receipt is not individual obtainment. KAC's gross receipts—if forfeitable at all—are first received by the entity. A money judgment against an individual requires proof of what that individual obtained (directly or indirectly) as proceeds, not an arithmetic assumption based on equity percentage. The motion identifies no corporate records showing distributions, profit allocations, draws, bonuses, or other transfers corresponding to the forfeiture amount.

The cited "$400,000 annually" testimony does not supply the missing link. The government also cites trial testimony that Mr. Bregenzer "made more than $400,000 annually from KAC." (R. 326, PageID.5658.) Even accepting that figure at face value, it does not establish (i) that those amounts were funded by the particular Medicare/Medicaid payments in the government's CPT buckets, or (ii) what portion (if any) was "traceable" to false claims rather than legitimate operations. The government's motion does not attempt that tracing.

No joint-and-several forfeiture via ownership percentage. The Supreme Court has rejected the premise that a defendant may be held liable in forfeiture for proceeds he did not personally obtain. *Honeycutt v. United States*, 581 U.S. 443 (2017). That principle forecloses the government's implicit "collective proceeds × ownership interest" approach absent proof that the defendant actually obtained that amount.

The government may ultimately be able to prove some forfeiture amount attributable to Mr. Bregenzer, but it has not done so in this motion.

**D. At Minimum, the Disputes Over Falsity/Medical Necessity and Obtainment Require a Rule 32.2(b)(1)(B) Evidentiary Hearing**

The motion itself recognizes the Court "may base its forfeiture decision on evidence already of record, or the parties may request a hearing to present additional evidence." (R. 326, PageID.5657.) Mr. Bregenzer requests that hearing.

The defense has already raised parallel reliability objections in the sentencing context. In the PSR objections, the defense identifies the same central defect: treating totals associated with CPT codes as "loss" without reliable proof of what was paid, what was denied/downcoded, and what portion reflects overpayment versus legitimate services—and emphasizing that disputed sentencing factors must be supported by information with "sufficient indicia of reliability." Bregenzer PSR Objections at "Objection No. 1a". The PSR objections also note the PSR's own restitution numbers list Medicare + Medicaid of $812,881.09 (the same ceiling the government uses here), while disputing the evidentiary basis to treat broad CPT-code totals as the operative measure.

Those reliability concerns apply with equal force to forfeiture—particularly where the government seeks to convert claims-data totals into a punitive money judgment against an individual without proving that each included claim was false/medically unnecessary and without proving what the individual obtained.

### V.  Requested Relief

For the foregoing reasons, Mr. Bregenzer respectfully requests that the Court:

Deny the government's motion as to Mr. Bregenzer because the government has not proven by a preponderance of relevant and reliable evidence that (a) $812,881.09 constitutes gross proceeds traceable to the offenses and (b) Mr. Bregenzer obtained $325,152.44; or

In the alternative, set an evidentiary forfeiture hearing under Fed. R. Crim. P. 32.2(b)(1)(B) and require the government to present competent proof addressing:

1. Which specific claims (or a statistically reliable, clinically supported sample) were actually false or medically unnecessary;

2. The methodology for converting any proven falsity into an amount "traceable" to the offenses; and

3. What amount Mr. Bregenzer actually obtained from any such proceeds (e.g., distributions, bonuses, salary components tied to the fraudulent receipts), supported by business and financial records.

Because the motion's proposed order assumes the contested conclusion that the requested sums "represent[] the amount of proceeds that each of the defendants obtained," it should not be entered on the present showing. (R. 326-1, PageID.5660.)

                                              Respectfully submitted,

Dated: 2/26/2026                  s/ *Ronald W. Chapman II*
                                    Ronald W. Chapman II, Esq., LL.M.
                                    MI Bar No. P73179
                                    (Admitted Pro Hac Vice)
                                    THE CHAPMAN FIRM
                                    456 E. Milwaukee Ave.,
                                    Detroit, Michigan 48202
                                    T: (346) 242-7626
                                    ron@chapmanandassociates.com

                                    *Counsel for Defendant Bregenzer*

**CERTIFICATE OF SERVICE**

I hereby certify that on 2/26/2026, I electronically filed the forgoing document with the clerk of court by using the CM/ECF system which will send the notice of electronic filing to all attorneys of record.

s/ <i>Ronald W. Chapman II</i><br>
Ronald W. Chapman II, Esq., LL.M.