**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

CRIMINAL ACTION NO. 5:23-cr-00009

UNITED STATES OF AMERICA                                    PLAINTIFF,

v.      **MICHAEL BREGENZER'S MEMORANDUM IN SUPPORT OF**
        **UNRESOLVED OBJECTIONS TO THE PSR**

MICHAEL BREGENZER                                          DEFENDANT.

---

Defendant Michael Bregenzer, through counsel, submits this memorandum in support of his unresolved objections to the Pre-Sentence Investigation Report, as required by the Court's post-trial order docketed at ECF No. 230 (at ¶ 5).

### Introduction

The Presentence Investigation Report ("PSR") dated November 14, 2025, applies the 2025 United States Sentencing Guidelines Manual ("USSG") and calculates Total Offense Level 30. Defendant Michael Bregenzer ("Mr. Bregenzer"), by and through undersigned counsel, submits the following objections to the guideline computations and related factual findings as set forth below, and requests that the Court make finding pursuant to Federal Rule of Criminal Procedure 32 and correct the advisory Guideline range.

### Summary of PSR Guideline Calculations at Issue

The PSR states that the "attributable loss" for guideline purposes is $4,883,397.03, derived from "total billed amount" figures for three CPT codes. It then applies:

- +18 levels under USSG §2B1.1(b)(1)(J)(loss amount exceeding $3.5 million but not greater than $9.5 million);

- +2 levels under USSG §2B1.1(b)(7)(A),(B)(i) (federal health care offense with loss to a government health care program exceeding $1 million); and

- +4 levels under USSG §3B1.1(a) (organizer or leader of criminal activity involving five or more participants or otherwise extensive).

**OBJECTIONS**

**Objection No. 1 (Paragraphs 37–38, 46):**

The loss amount under USSG §2B1.1(b)(1) is overstated and not supported by the PSR's Methodology in Paragraphs 37–38, 46. The PSR treats "loss" as the aggregate billed amounts for smoking cessation counseling (99406) and office visits billed under codes (99213) and (99214), totaling $4,883,397.03. *Id.* At the outset, smoking cessation was capped at 8 times per year (99406 and 99407). This means that the most that could be obtained by the practice was less than $90 per patient per year. Jose and Ricardo Alzadon had no more than 500 patients, even according to the Government's estimates, which amounts to no more than $100,000 per year. Regardless, the PSR treats each smoking cessation code billed as if it were actually paid. This is inappropriate because it would have been impossible for Medicaid to pay more than $100,000 for smoking cessation, and the actual paid amount is much lower.

Paragraph 37 of the PSR claims the loss is $722,457.00 for the billed amount of smoking cessation codes and $2,423,486.84 for all office visits billed under code 99214 to Medicare and Medicaid. The third amount, $1,737,435.19 which is the total billed amount of 99213 codes billed to Medicare and Medicaid by *Ricardo Alzadon is inaccurate*. ¶ 37. The Government's claims data shows only $926,000 of billed 99213 codes attributable to *Ricardo Alzadon*. There is an $800,000 discrepancy between the Government's claims data for Medicare and Medicaid evaluation and

2

management codes billed by Ricardo Alzadon. The PSR has no explanation for this and is in error.

Additionally, the PSR's loss figure is expressly based on amounts billed, not amounts paid, and does not explain why billed amounts reflect intended loss as defined in §2B1.1 cmt. n.3(A).

The PSR's own restitution section identifies amounts due to Medicare and Medicaid totaling $812,881.09 ($256,847.88 to Medicare + $556,033.21 to Medicaid). *See* ¶ 100. The PSR does not reconcile why guideline "loss" is nearly six times the restitution/actual-loss figures it elsewhere reports.

The PSR alleges "upcoding" (billing office visits at a higher level than occurred). ¶ 31. For upcoding-type conduct, the guideline "loss" is ordinarily the overpayment differential (what the program paid minus what it would have paid had proper coding occurred), not the full billed amount for every office visit coded 99213 or 99214. The PSR does not compute the differential, does not credit any legitimate services, and does not identify which claims were entirely fictitious versus merely miscoded.

The PSR states the "attributable loss calculation for Bregenzer, Alzadon, and Vanhoose" is $4,883,397.03. ¶ 37. Under USSG §1B1.3(a)(1)(B), the Court must determine for the particular defendant the scope of jointly undertaken activity, whether conduct was in furtherance, and whether it was reasonably foreseeable. The PSR provides a global "attributable loss" label without the required individualized scope/foreseeability analysis.

**Requested Correction/Relief:**

The defense requests that the Court reject the $4,883,397.03 loss figure as unsupported and require the Government to prove loss by a preponderance consistent with §2B1.1 cmt. n.3 and §1B1.3.

At minimum, absent adequate proof of intended loss, "loss" should be based on actual program payments (or overpayment differentials) and reduced by the value of any legitimate services. The PSR's restitution numbers provide a concrete ceiling for actual loss absent additional proof: $812,881.09.

This correction directly affects the §2B1.1(b)(1) enhancement level (and, as shown below, the §2B1.1(b)(7) enhancement).

**<u>Objection 1a (Paragraphs 37–39 and 46)</u>:**

Paragraphs 37–39 and 46, which address the loss amount under §2B1.1(b)(1) and §2B1.1(b)(7)), are incorrect because they do not account for Managed Care Organization ("MCO") losses and Medicare losses.

When a factor important to sentencing is in dispute, the Court may consider relevant information only if it has "sufficient indicia of reliability to support its probable accuracy." USSG §6A1.3(a).

The PSR states "attributable loss" is $4,883,397.03, calculated as the sum of total billed amounts for Current Procedural Terminology ("CPT") codes 99406, 99214, 99213 billed "to Medicare and Medicaid."' ¶ 37. The PSR states the victims "Medicaid and Medicare have suffered compensable losses," but does not identify any Managed Care Organization victim or quantify any MCO loss. ¶ 39.

 Mr. Bregenzer objects to the PSR's loss determination of $4,883,397.03 and the resulting enhancements under USSG §2B1.1(b)(1) and §2B1.1(b)(7) because the PSR equates "total billed amount" with "loss" without establishing—by reliable evidence—that Medicare, Medicaid, or any Kentucky Medicaid MCO actually paid those amounts.  ¶¶ 37–39, 46.

Under USSG §2X1.1(a), the base offense level is the substantive guideline "plus any adjustments … for any intended offense conduct that can be established with reasonable certainty." The PSR itself quotes and applies this "reasonable certainty" requirement when incorporating §2B1.1 into the 18 U.S.C. § 1349 conspiracy calculation.  ¶ 46.

The PSR uses "total billed amount" as "loss" without proving payment or net pecuniary harm. The PSR's loss number is expressly defined as the sum of total billed amounts for selected CPT codes. But the PSR does not state, claim-by-claim (or even in the aggregate), what was:

- actually paid versus denied or downcoded;

- recouped (audits/overpayment refunds) versus retained; or

- paid by Medicare Fee-for-Service ("FFS"), Medicare Advantage, Kentucky Medicaid FFS, or Kentucky Medicaid MCOs (and which plan paid what).

The PSR itself explains that Medicare reimbursement is not synonymous with billed charges—CMS reimburses "specific amounts" determined by CMS, and payors decide whether to "issue or deny reimbursement" based on CPT codes and coverage rules.  ¶ 14.

Moreover, Medicaid reimbursement is based on a completely different MCO structure. The offense conduct section explicitly references billing to "certain Medicaid Managed Care Organizations (MCOs)" and describes that billing in the context of using Dr. Ricardo Alzadon's name and NPI. ¶¶ 33, 36. Yet the PSR's victim impact section identifies only "Medicaid and Medicare" as victims and does not identify any MCO (*e.g.,* Humana, Anthem, WellCare, Passport) or state that any MCO paid and lost money. ¶ 39.

This omission is critical because Kentucky Medicaid MCO payment mechanics do not mirror Medicaid fee-for-service, and the PSR's generic statement that "Medicaid … suffered

5

compensable losses" does not establish that the Medicaid program's expenditures increased by the billed amounts. *Id.*

The PSR later states restitution is $256,847.88 to Medicare and $556,033.21 to Medicaid (total $812,881.09). ¶ 100. This internal discrepancy—$4,883,397.03 billed versus $812,881.09 restitution—is strong evidence that "billed amount" is not a reliable proxy for actual pecuniary harm and that the PSR's loss methodology requires proof (payments, adjustments, denials, offsets, recoupments) before enhancements are applied.

Kentucky Medicaid managed care is administered through contracted Managed Care Organizations, including (as relevant here) Humana, Anthem, WellCare, and Passport (Kentucky Medicaid MCOs). Under federal Medicaid managed care law and regulation (*see*, *e.g.*, 42 U.S.C. § 1396u-2 and 42 C.F.R. Part 438), states generally pay MCOs prospective, actuarially sound capitation payments (a fixed per-member-per-month amount, adjusted for eligibility/risk categories), and the MCO then pays network providers under contractual reimbursement rules.

The State Medicaid agency does not pay providers per claim in the same way as fee-for-service. Providers submit claims to the MCO for adjudication under the MCO-provider contract/fee schedule, and the MCO (not the State) issues the remittance/payment.

The amount "billed" by a provider is not the amount "paid." MCOs routinely reduce billed charges to the contract rate/allowable amount, deny non-covered services, and apply edits (medical necessity, bundling, duplicate billing, *etc.*).

The State's capitation payment is generally not mechanically increased by the number of claims billed by a provider during the capitation period. Thus, without evidence that (a) the MCO actually paid the claims at issue, (b) those payments were not later recouped, and (c) the State's

expenditures increased (if the Government theory is "loss to Medicaid"), the PSR cannot reliably treat provider billed charges as loss to Medicaid.

If the relevant claims were paid by an MCO, the potentially injured entity is the MCO (Humana/Anthem/WellCare/Passport), and the "loss" inquiry must be tethered to what the MCO actually paid (net of recoveries)—not to the provider's submitted charge amount.

The PSR does not supply the needed factual bridge between (i) billed totals and (ii) actual pecuniary harm to any identified victim—whether Medicare, Medicaid, or any MCO.

This could be easily accomplished by testimony from each MCO, but the Government specifically elected to not call representatives from MCOs and did not elect to have affidavits submitted supporting damages.

**Requested Correction/Relief:**

Sustain the objection and find the PSR's asserted loss of $4,883,397.03 is not established by reliable evidence and not established with the "reasonable certainty" required for conspiracy adjustments under USSG §2X1.1(a).

**Strike or decline to apply:**

- the 18-level increase under USSG §2B1.1(b)(1)(J), and
- the 2-level increase under USSG §2B1.1(b)(7)(A), (B)(i), unless and until the Government proves, with reliable claim-level evidence, the actual (or properly supported intended) loss amount and identifies the correct victims/payors.

**Objection No. 1b (Paragraph 46):**

The two-level enhancement under USSG §2B1.1(b)(7) is unfounded and derivative of the erroneous loss calculation in Paragraph 46.

7

The PSR adds a two-level enhancement because "loss under subsection (b)(1) to the government health care program was more than $1,000,000." ¶ 46.

The enhancement is explicitly tied to the loss determined under §2B1.1(b)(1). The PSR's (b)(1) loss is itself disputed as overstated and unsupported (Objection No. 1).

If the Court finds loss at or near the PSR's own restitution amounts (Medicare + Medicaid = $812,881.09), the threshold for §2B1.1(b)(7)(B)(i) is not met.

The PSR does not provide a loss-to-program analysis distinguishing billed versus paid versus net overpayment; it simply carries forward the billed-amount loss. If loss is found to be less than $1,000,000, the Court should remove the two-level enhancement under §2B1.1(b)(7).

**Objection No. 2 (Paragraphs 49 and 55):**

The four-level enhancement under USSG §3B1.1(a) for an Organizer/Leader Role Enhancement is unsupported by Paragraphs 49 and 55.

The PSR applies a four-level enhancement on the conclusory finding that Mr. Bregenzer was an organizer/leader of criminal activity that "involved five or more participants or was otherwise extensive." ¶¶ 49, 55.

There is no identification of five criminally responsible "participants." The PSR lists several individuals connected to KAC (owners, doctor, billing manager, staff), but the guideline requires "participants" be criminally responsible (not merely employees or unknowing service providers). The guideline section does not identify who the five participants are or why each qualifies.

No factual findings support "otherwise extensive." "Otherwise extensive" is not established by conclusory language; the PSR does not quantify the number of knowing

8

participants, the number of unknowing outsiders whose services were organized, or how the activity meets the guideline's meaning of extensiveness.

The PSR includes factual assertions that Mr. Bregenzer gave direction to employees and ignored warnings. ¶ 39. But those assertions, even if credited, do not substitute for the required guideline findings of participant count and/or extensiveness supporting a §3B1.1(a) enhancement, rather than a lesser enhancement (or none).

The Court should disallow §3B1.1(a) unless the Government proves: (1) organizer/leader status and (2) five or more participants or "otherwise extensive" within the meaning of the guideline commentary.

Alternatively, if any role adjustment applies, the defense requests that the Court consider whether the evidence supports at most a three-level enhancement under §3B1.1(b), or a two-level enhancement under §3B1.1(c), with explicit findings.

**Objection No. 2a (Paragraphs 59, 65–66):**

The PSR does not address the Zero-Point Offender adjustment under USSG §4C1.1 (and it should apply if §3B1.1 is not sustained) in Paragraphs 59, 65–66.

After selecting offense level 30, the PSR states "Chapter Four Enhancement: None." ¶ 59. It also finds the defendant has 0 criminal history points and is Criminal History Category ("CHC") I. ¶¶ 65–66.

The PSR does not analyze whether the defendant qualifies for the §4C1.1 adjustment despite having zero criminal history points.

If the Court sustains the defense objection to any §3B1.1 aggravating role adjustment (Objection No. 3), Mr. Bregenzer may become eligible for §4C1.1's two-level reduction (subject to the remaining criteria), which would materially reduce the advisory range.

9

The Court should require an explicit §4C1.1 eligibility analysis and apply §4C1.1 if the criteria are met (particularly if §3B1.1 is not applied).

**Objection No. 3 (Paragraph 45):**

Grouping under USSG §3D1.2(b) is incorrectly justified ("same victim") and should be corrected to avoid sentencing error in Paragraph 45.

The PSR groups the fraud counts as "Group One" under §3D1.2(d) and then states Groups One and Two "group together" under §3D1.2(b) because they involve "the same victim" and common scheme. ¶ 45.

The PSR elsewhere identifies Medicare and Medicaid as the victims of the health care fraud counts, but states that for the drug count "society, in general, is a victim" and there is no method to identify specific victims. ¶ 39.

That description is inconsistent with the PSR's assertion of the "same victim" for grouping under §3D1.2(b). Even if the corrected grouping does not change the ultimate offense level, the Court should avoid a guideline application error and create a clean record.

The PSR should be corrected to reflect the proper grouping rationale and application of §3D1.2 and §3D1.4, with explicit findings.

**Objection No. 4 (Paragraph 88):**

The PSR's statement that Count 14's guideline range is 48 Months misstates USSG §5G1.2's "total punishment" framework in Paragraph 88.

The PSR states the guideline range on Counts 1 and 4–11 is 97–121 months, then states that for Count 14 the statutory maximum is 48 months and "therefore, the guideline imprisonment range is 48 months," citing §5G1.2(b). ¶ 88.

10

§5G1.2 addresses how to impose sentences on multiple counts to achieve the guideline "total punishment" within the overall guideline range, subject to statutory maximums. It is misleading to treat Count 14 as having its own separate "guideline range" of 48 months.

The correct approach is to determine the guideline total punishment (here driven by the combined offense level) and then apply the statutory maximum to Count 14 as a cap on that count, with concurrency/consecutiveness as §5G1.2 requires.

The PSR should be corrected to describe Count 14 as capped at 48 months (statutory maximum) within the overall guideline "total punishment" analysis under §5G1.2.

**Objection No. 5 (Paragraphs 100-101):**

The PSR's community restitution discussion misstates eligibility under USSG §5E1.1(d) (community restitution in cases with no identifiable victim, where authorized), and related statutory authority (18 U.S.C. § 3663(c)). in Paragraphs 100–101.

The PSR states community restitution "may be ordered" and that the defendant "was convicted of an offense involving" specified statutes (21 U.S.C. §§ 841, 848(a), 849, 856, 861, or 863). ¶¶ 100–101. The PSR elsewhere states Count 14 is 21 U.S.C. § 846 and, in its guideline computation, describes the underlying conduct as 21 U.S.C. § 843(a)(2).

The PSR's community restitution analysis appears to assume conviction under statutes not reflected in the PSR's own count of conviction/underlying offense description, creating a legal and guideline authorization problem.

The PSR should be corrected to accurately state whether community restitution is authorized for this conviction and, if not authorized, the community restitution recommendation should be withdrawn.

11

Respectfully submitted,

Dated: April 15, 2026

s/ *Ronald W. Chapman II*
Ronald W. Chapman II, Esq., LL.M.
MI Bar No. P73179
(Admitted Pro Hac Vice)
THE CHAPMAN FIRM
456 E. Milwaukee Ave.
Detroit, Michigan 48202
T: (346) 242-7626
ron@chapmanandassociates.com

s/ *John J. Dowling III.*
John J. Dowling III.
NC Bar No. 57517
(Admitted Pro Hac Vice)
DOWLING DEFENSE GROUP LLC
6201 Fairview Road, Suite 200
Charlotte, North Carolina 28210
Ph: 631-574-7905
E: john@dowlingdefensegroup.com

*Counsel for Defendant Michael Bregenzer*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the foregoing through the CM/ECF system on counsel for all parties.

This the 15th day of April, 2026.

/s/ *John J. Dowling III.*
John J. Dowling III.

12