**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

CRIMINAL ACTION NO. 5:23-cr-00009

UNITED STATES OF AMERICA                                          PLAINTIFF,

v.                              **MOTION FOR BOND PENDING APPEAL**

MICHAEL BREGENZER                                                 DEFENDANT.

---

Defendant Michael Bregenzer, through counsel, moves under 18 U.S.C. § 3143(b) and Federal Rule of Criminal Procedure 38(b)(1) for continued release on his existing conditions while his appeal is pending, and for a stay of his September 29, 2026 surrender date. The appeal has been docketed as *United States v. Bregenzer*, No. 26-5667 (6th Cir.).

Mr. Bregenzer has remained on release throughout this case, including after the jury's verdict and after sentencing. He has complied with every condition for several years. At sentencing, this Court again continued his release on the existing conditions and permitted him to self-surrender. ECF No. 402. Those facts establish by clear and convincing evidence that he is neither a flight risk nor a danger.

The appeal is not taken for delay and presents at least two substantial questions. First, after this trial the Sixth Circuit held that the same definition of "knowingly and willfully" used here fails to convey the *mens rea* required by 18 U.S.C. § 1347. *United States v. Singh*, 147 F.4th 652, 658–59 (6th Cir. 2025). *Singh* requires proof that a health-care-fraud defendant knew the charged conduct was unlawful. *Id.* The jury here instead was told that conduct is knowing and willful whenever it is voluntary and intentional and not the product of mistake or another innocent reason. ECF No. 268, Page ID 5034–35. The Government proposed that language. ECF No. 169, Page ID

1052. And, before the jury retired, defense counsel made a "substantive objection": health-care fraud "requires a willful violation, not simply knowledge," and the Government had to prove that Mr. Bregenzer "understood the illegality." ECF No. 266, Page ID 4819–20. Counsel warned that anything less would permit a "red-flags prosecution and conviction." *Id.*, Page ID 4821. That record presents a substantial question whether the *Singh* error was preserved; even if reviewed only for plain error, *United States v. Clay* confirms that prejudice from the same error can be a "close question." 162 F.4th 757, 765–68 (6th Cir. 2025).

Second, the appeal presents a close and preserved question concerning the loss of two material defense witnesses and the one-sided evidentiary record that followed. The Sixth Circuit's "longstanding rule" generally requires a witness to take the stand and answer individualized questions before invoking the Fifth Amendment. *In re Flint Water Cases*, 53 F.4th 176, 210 (6th Cir. 2022). Here, Trouper Krueger invoked even when asked whether he had ever worked at KAC and then stated that he would invoke as to every question; the Court accepted that blanket invocation without a question-specific inquiry. ECF No. 266, Page ID 4712–13. Kristi Elrod likewise did not testify. The Government had already used communications attributed to KAC insiders under the coconspirator exception. The defense then could not call Krueger to explain those communications or authenticate emails showing audits, billing controls, and instructions not to bill without supporting documentation. *See id.*, Page ID 4736–53. The result was an *Enright* record in which the Government could present selected communications as proof of conspiracy while the defense could not place the same actor's compliance work in context.

The Court rejected the post-trial arguments concerning these witnesses. ECF No. 320. But § 3143(b) does not require the Court to conclude that it committed reversible error. *United States v. Pollard*, 778 F.2d 1177, 1181–82 (6th Cir. 1985). It asks whether an appellate question is close and, if resolved for the defendant, is likely to produce reversal or a new trial. *Id.* These questions

2

meet that standard. The witness question reaches both charged schemes and, if resolved in Mr. Bregenzer's favor, would require a new trial. The *Singh* question independently affects nine of the ten counts of conviction.

## MEMORANDUM IN SUPPORT

### I.    BACKGROUND

After a multi-week trial, the jury found Mr. Bregenzer guilty of conspiracy to commit health-care fraud (Count 1), eight substantive counts of health-care fraud (Counts 4 through 11), and conspiracy to use another person's controlled-substance registration number (Count 14), and not guilty on Counts 12 and 13. ECF Nos. 226, 401.

Mr. Bregenzer moved for a judgment of acquittal or a new trial. ECF No. 271. Among other issues, the motion argued that government action and the acceptance of blanket Fifth Amendment invocations deprived the defense of Krueger's and Elrod's testimony and related evidence. The Government responded, ECF No. 298, and Mr. Bregenzer replied, ECF No. 310. The Court denied the motion on January 20, 2026. ECF No. 320.

On July 24, 2026, the Court imposed concurrent 48-month terms of imprisonment on the counts of conviction, followed by concurrent terms of supervised release, and ordered restitution. ECF Nos. 402, 405. The Court continued the prior release conditions and directed Mr. Bregenzer to self-surrender by 2:00 p.m. on September 29, 2026. ECF No. 402. Judgment was entered July 29, 2026, and Mr. Bregenzer filed his notice of appeal the same day. ECF Nos. 405, 407. The Sixth Circuit docketed the appeal as No. 26-5667. ECF No. 408.

### II.    GOVERNING STANDARD

Section 3143(b)(1) directs that a convicted defendant be detained pending appeal unless the Court finds:

3

(A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released; and

(B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in reversal, a new trial, a noncustodial sentence, or a reduced prison term shorter than the expected duration of the appeal.

18 U.S.C. § 3143(b)(1). The defendant bears the burden. *United States v. Chilingirian*, 280 F.3d 704, 709 (6th Cir. 2002).

A "substantial question" is one that is "close" or "could go either way." *Pollard*, 778 F.2d at 1182. The question must also be sufficiently integral to the conviction that, if resolved for the defendant, reversal or a new trial is more probable than not. *Id.* This standard does not require a district court to find that it committed reversible error. *Id.* at 1181–82. The Court instead decides whether the issue deserves appellate resolution and whether a defense-favorable resolution would produce one of the remedies specified by § 3143(b)(1)(B).

This case is not subject to mandatory detention under § 3143(b)(2). The convictions are not for crimes of violence, offenses carrying a maximum sentence of life imprisonment or death, or the drug offenses described in 18 U.S.C. § 3142(f)(1)(A)-(C).

### III.    MR. BREGENZER IS NEITHER A FLIGHT RISK NOR A DANGER.

Clear and convincing evidence establishes the first statutory requirement. Mr. Bregenzer has no prior criminal history. ECF No. 365, Page ID 5966. He has complied with all conditions of pretrial release for several years, including the period after the jury returned its verdict. *Id.* The Court had the benefit of the presentence report and the parties' sentencing submissions when it continued his release after imposing sentence and authorized self-surrender. ECF No. 402.

The sentencing record supplies concrete reasons why he will remain. Mr. Bregenzer is the primary provider for his family and has been closely involved in his daughters' lives, education, athletics, and major milestones. ECF No. 365, Page ID 5974–76. His wife, children, extended

4

family, church, employees, and neighbors are not abstract ties; they are the fixed relationships around which he has organized his life.

His service is equally rooted in place. Mr. Bregenzer regularly attends Regeneration Church and has served on its board. *Id.*, Page ID 5976–77. The letters submitted at sentencing describe years of repairing homes for widows and elderly neighbors, transporting elderly people to medical appointments, delivering meals, supporting families confronting cancer and grief, and responding when storms and power outages left others in need. *Id.*, Page ID 5974–77. During Hurricane Harvey, he led family and neighbors through dangerous conditions and opened his home to displaced people. *Id.*, Page ID 5974–75. He later helped lead a fundraiser that raised more than $70,000 for a young girl's life-saving surgery after a brain injury. *Id.*, Page ID 5979.

The same pattern appears in his work. The sentencing submissions describe his payment of an employee's funeral expenses, continued support for an employee undergoing cancer treatment, provision of temporary housing for an employee receiving care in Houston, and efforts to preserve employment and provide grief counseling and peer support. *Id.*, Page ID 5974–75, 5977–78. Nothing in Mr. Bregenzer's background suggests danger to another person or the community.

His conduct during this prosecution is the best predictor. He remained under supervision for years, appeared as required through a lengthy trial, stayed compliant after an adverse verdict, and reported for sentencing knowing the Government sought imprisonment. *Id.*, Page ID 5980, 5990. The Court then imposed the actual 48-month sentence, continued release, and allowed self-surrender. ECF Nos. 402, 405. Mr. Bregenzer thus had both knowledge of the conviction and knowledge of the sentence, yet did exactly what the Court required.

The existing conditions provide additional assurance. Mr. Bregenzer surrendered his passport, may not obtain another international travel document, is subject to geographic travel

5

restrictions, must report to the supervising office as directed, and must report law-enforcement contacts. ECF No. 37. Nothing material has changed since sentencing. On this individualized record, his demonstrated compliance, known residence and family obligations, deep church and community commitments, lack of criminal history, and the Court's post-sentence release decision collectively establish by clear and convincing evidence that he is unlikely to flee and poses no danger.

## IV.    THE APPEAL IS NOT FOR DELAY.

Mr. Bregenzer filed his notice of appeal on the same day judgment was entered. ECF Nos. 405, 407. The appeal has already been docketed in the Sixth Circuit. ECF No. 408. It raises a controlling intervening Sixth Circuit decision concerning the principal counts of conviction and a preserved constitutional question that was extensively litigated after trial. Neither issue is contrived for purposes of postponing imprisonment.

The practical circumstances point in the same direction. Mr. Bregenzer received a four-year sentence. Appellate briefing, argument, and decision may consume a meaningful portion of that term. Seeking appellate review before beginning to serve a sentence that may be affected by a new-trial ruling is the purpose of § 3143(b), not evidence of delay.

## V.    THE APPEAL PRESENTS SUBSTANTIAL QUESTIONS LIKELY TO RESULT IN A NEW TRIAL IF RESOLVED IN MR. BREGENZER'S FAVOR.

### A.    *Singh establishes a substantial question concerning the mens rea instructions for Counts 1 and 4 through 11.*

#### 1.    The instruction was materially identical to the instruction held erroneous in *Singh*.

Section 1347 punishes a person who "knowingly and willfully executes" a scheme to defraud a health-care-benefit program. 18 U.S.C. § 1347(a). In *Singh*, the Sixth Circuit applied the Supreme Court's construction of "willfully" and held that § 1347 requires proof that the defendant

knew her conduct was unlawful. 147 F.4th at 658–59 (citing *Bryan v. United* States, 524 U.S. 184, 192 (1998)).

The trial court in *Singh* had defined "knowingly and willfully" to mean that an act was done "voluntarily and intentionally, and not because of mistake or some other innocent reason." *Id.* The Sixth Circuit held that this language failed to convey the required knowledge of unlawfulness. *Id.*

The jury in this case received the same definition:

> An act is done "knowingly and willfully" if it's done voluntarily and intentionally and not because of a mistake or some other innocent reason.

ECF No. 268, Page ID 5035. The next page added that the Government did not need to prove "actual knowledge of a statute or specific intent to commit a violation of the statute." *Id.*, Page ID 5035–36. Under *Singh*, the instruction did not tell the jury that Mr. Bregenzer had to know the charged conduct was unlawful.

The Government proposed the instruction before trial as part of its proposed Instruction 13. ECF No. 169, Page ID 1052–54. The Court later described the instructions as pattern instructions. ECF No. 266, Page ID 4776. Although defense counsel initially answered "no objection" when the Court called Instruction 13, *id.*, Page ID 4777, the charge conference did not end there.

### 2. The later substantive objection distinctly stated the *Singh* ground before the jury retired.

Later in the same charge conference, the Court asked, "Now, you have another substantive objection, Mr. Chapman?" Counsel answered, "Yes, Your Honor," and then stated the precise point *Singh* later adopted:

> Health care fraud requires a willful violation, not simply knowledge. . . . [T]he statutory requirement is a willful violation, [and] it must be supported by proof that the defendant knew the pertinent facts and understood the illegality.

ECF No. 266, Page ID 4819–20 (emphasis added).

When the Court asked whether counsel's position meant there could be no deliberate-ignorance charge, counsel confirmed: "Knew the illegality of the pertinent facts." *Id.*, Page ID 4820. Counsel warned that omitting that requirement would produce a "red-flags prosecution and conviction," permitting asserted misconduct to substitute for criminal intent. *Id.* at Page ID 4821. At that point in the conference, the Court stated that it would give the proposed instruction and "note the objections." *Id.*, Page ID 4823.

Counsel expressly identified the objection as substantive, stated that health-care-fraud willfulness requires knowledge and understanding of illegality, explained the consequence of a lesser standard, and obtained a ruling. Because the charge must be considered as a whole, the Court had both notice of the precise *Singh* ground and an opportunity to correct Instruction 13 before deliberations. The final charge omitted deliberate ignorance but retained the definition that counsel's objection identified as insufficient. ECF No. 268, Page ID 5034–35.

### 3.      Even under plain-error review, the question is substantial.

On plain-error review, an appellant must show an error that is plain, affects substantial rights, and seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Olano*, 507 U.S. 725, 732–36 (1993); *Greer v. United States*, 593 U.S. 503, 507–08 (2021).

The first two requirements are supported directly by *Singh*: the definition given here is materially identical to the definition *Singh* held insufficient under § 1347. Because *Singh* is binding circuit law and predates appellate review in this case, the error is plain even though *Singh* was decided after trial. *See Henderson v. United States*, 568 U.S. 266, 273–79 (2013) (plainness is assessed at appellate review).

The effect on substantial rights is at least a close question. Knowledge and good faith were the central disputes at trial. The Government relied on evidence that Mr. Bregenzer owned and managed KAC, received compliance warnings, and failed to correct practices the Government characterized as fraudulent. The defense maintained that he relied on medical, billing, and compliance personnel and lacked knowledge that KAC's conduct was unlawful. The erroneous instruction permitted the jury to treat voluntary conduct, standing alone, as willful so long as it was not a mistake or accident. And the surrounding instruction allowed a false assertion to be found when made with "reckless indifference" to its truth. ECF No. 268, Page ID 5035. That framework did not require the finding *Singh* commands: knowledge that the charged conduct was unlawful.

This is not a case in which a correct willfulness definition appeared elsewhere in the charge. Instruction 13 supplied the operative definition for each substantive health-care-fraud count. The conspiracy instruction also expressly incorporated health-care fraud "as defined in Jury Instruction 13." ECF No. 266, Page ID 4777; *See* ECF No. 268, Page ID 5027–29. The same deficiency therefore reached Count 1 and Counts 4 through 11.

The Sixth Circuit's first published post-*Singh* application confirms that the issue is substantial. In *United States v. Clay*, the Court addressed an essentially identical instructional claim under the fourth plain-error prong. 162 F.4th at 765–68. *Clay* declined discretionary relief because the defendant had "stipulated at trial to the instruction he now challenges" and therefore affirmatively invited the error. *Id.* at 768. Even with that serious obstacle, *Clay* described prejudice as "a close question." *Id.* Here, by contrast, the Government proposed the instruction and defense counsel expressly argued that health-care fraud requires understanding of illegality. *Clay*'s central reason for withholding relief is absent, while the question *Clay* called close remains.

The Government will likely argue that the evidence established knowledge of unlawfulness and that the error did not change the verdict. But whether this record permits confidence that a properly instructed jury would have reached the same verdict is precisely the kind of question that "could go either way." *Pollard*, 778 F.2d at 1182. A later Sixth Circuit decision has continued to cite *Singh* for the proposition that § 1347 requires knowledge that the conduct is unlawful. *United States v. Jenkins*, No. 23-3820, 2025 WL 2946081, at *7 (6th Cir. Oct. 17, 2025). And the Government itself has acknowledged in another pending Sixth Circuit appeal that materially identical language is "plainly erroneous" under *Singh*, while contesting prejudice. *See* Brief for the United States at 36–45, *United States v. Toya*, No. 25-1907 (6th Cir. filed June 3, 2026).

**4.      A defense-favorable ruling would require a new trial on nine counts.**

If the Sixth Circuit finds reversible plain error, the remedy will be vacatur and a new trial on Count 1 and Counts 4 through 11. Those are nine of the ten counts on which judgment was entered and the core of the case presented to the jury. The *Singh* issue therefore satisfies both components of § 3143(b)(1)(B): it is a substantial question, and a defense-favorable resolution is likely to result in an order for a new trial on the affected counts.

**B.      *The Enright rulings, blanket Fifth Amendment invocations, and exclusion of Krueger's contextual emails present a substantial question reaching all counts.***

**1.      The record presents a close question under the Sixth Circuit's individualized-inquiry rule.**

A criminal defendant has a constitutional right to present witnesses in his defense. *Webb v. Texas*, 409 U.S. 95, 98 (1972). That right yields when a witness has a valid Fifth Amendment privilege grounded in a *reasonable* fear of prosecution. *United States v. Highgate*, 521 F.3d 590, 593–94 (6th Cir. 2008). The trial court must determine whether the invocation is justified. *Id.*

The Sixth Circuit's "longstanding rule" is that a witness ordinarily must take the stand and answer individualized questions to invoke the privilege. *In re Flint Water Cases*, 53 F.4th at 210

10

(quoting *United States v. Bates*, 552 F.3d 472, 475 (6th Cir. 2009)). A blanket invocation generally does not, by itself, demonstrate the required reasonable fear of prosecution. *Id.* (quoting *Highgate*, 521 F.3d at 593–94). The rule does not apply when the record establishes the witness's "clear entitlement" to invoke because the court already knows reasonable cause exists. *Id.* (quoting *United States v. McAllister*, 693 F.3d 572, 583–84 (6th Cir. 2012)).

This Court concluded that Krueger and Elrod clearly qualified for that exception because the Court had made coconspirator findings, the limitations period remained open, and trial evidence implicated them. ECF No. 320, Page ID 5620–23. The defense recognizes that reasoning and does not ask this Court to reverse it in deciding the present motion. *Pollard* asks a different question: whether the boundary between the general rule and the clear-entitlement exception is close enough to warrant appellate resolution.

It is. The only question put to Krueger was whether he had ever worked for KAC. He invoked. When asked whether he would invoke as to every question, he again invoked. The Court accepted that blanket position and excused him without identifying which proposed subjects or questions presented a real hazard of self-incrimination. ECF No. 266, Page ID 4711–13. Elrod likewise did not give substantive testimony after appointed counsel advised that she would invoke. ECF No. 320, Page ID 5620–23.

The contrast between the breadth of the invocation and the absence of a question-specific record creates a substantial question under *Flint Water*, *Bates*, *Highgate*, and *McAllister*. Employment at KAC was not itself incriminating, yet even that foundational question went unanswered. An appellate court could agree with this Court that the coconspirator findings made the witnesses' entitlement clear. It could also conclude that the breadth of the proposed testimony and the facially nonincriminating opening question required a more particularized inquiry. That is a close question within *Pollard*'s meaning.

11

The record also supports preservation of that objection. On Day 12, Mr. Chapman asked to preserve the Elrod issue through a question-by-question invocation. ECF No. 264, Page ID 4564–65. The Court instead permitted Krueger to invoke in response to the foundational question whether he had worked at KAC and then to state that he would invoke as to every question. ECF No. 266, Page ID 4711–13. The order denying posttrial motions later stated that no defendant had requested a question-by-question inquiry. ECF No. 320, Page ID 5620–24. The Day 12 exchange is difficult to reconcile with that characterization and reinforces that the preservation and individualized-inquiry issues are substantial.

### 2. The Government's midtrial intervention makes the constitutional question independently substantial.

The record also presents a related question whether the manner and timing of the Government's intervention substantially interfered with the witnesses' free choice to testify. Government conduct that substantially interferes with a defense witness may violate due process and compulsory process. *Webb*, 409 U.S. at 98; *United States v. Foster*, 128 F.3d 949, 953 (6th Cir. 1997). At the same time, a prosecutor may appropriately alert the court that a potential defense witness needs advice concerning self-incrimination. *Davis v. Straub*, 430 F.3d 281, 287–88 (6th Cir. 2005).

The facts straddle that line. The defense had subpoenaed Krueger and Elrod and intended to call them. After the Court's coconspirator findings, the Government requested that counsel be appointed or consulted because the limitations period remained open. ECF No. 263, Page ID 4390–91. At sidebar, the Government stated that it was "not insinuating culpability," and the Court accepted its representation that it was not trying to suppress testimony. *Id.*, Page ID 4392. Later, however, the Government explained that immunity "depends on what they say on the stand" and

that if a witness said something incriminating, prosecutors had an obligation to consider whether it was chargeable. *Id.*, Page ID 4397–98.

The Government's positions were also in tension. It told the Court that it was "not insinuating culpability," yet relied on Krueger's and Elrod's treatment as unindicted coconspirators and the open statute of limitations to justify warning them about prosecution. ECF No. 263, Page ID 4390–98; ECF No. 320, Page ID 5620–24. The Government also came prepared with a package of selected materials for counsel advising Krueger and Elrod. ECF No. 263, Page ID 4393, 4400–06. That preparation, followed by intervention only when the defense was ready to present the witnesses, supports an inference of strategic delay.

The relevant timeline had crystallized well before trial. Krueger gave a proffer in July 2024 while represented by Anna Whites, who also represented KAC. The Government later filed ECF No. 117 requesting a January 15 deadline for defense counsel to identify anticipated advise-of-counsel defenses, so that avoidable witness issues would not cause unnecessary trial delays. At trial, AUSA Edwards stated that she needed to check the Government's conflict records concerning the prior representation; the cited record does not reflect a later report of what that check showed. *See* ECF No. 263, Page ID 4397–99. These facts support the defense position that the conflict risk and Krueger's anticipated testimony were known in time to address them before the defense case.

Krueger had previously participated in a proffer with counsel. *Id.*, Page ID 4397–98. A conflict issue then resulted in replacement counsel shortly before his anticipated testimony. ECF No. 267, Page ID 4875–77. The defense objected that new counsel had too little time to master a complex record and that the predictable consequence would be a blanket invocation. *Id.* Krueger then invoked as to every question. ECF No. 266, Page ID 4712–13.

13

*Davis* supports the Government's ability to raise a *genuine* privilege concern. But *Davis* does not eliminate the fact-intensive question whether the combined timing, statements about possible future prosecution based on testimony, selected information supplied to newly appointed counsel, and acceptance of blanket invocations crossed from neutral advice into substantial interference. Reasonable jurists could resolve that question differently on this record.

### 3. The *Enright* rulings and Krueger's unavailability produced a one-sided evidentiary record.

The problem cannot be evaluated apart from the Court's coconspirator rulings under *United States v. Enright*, 579 F.2d 980, 986 (6th Cir. 1978), and Federal Rule of Evidence 801(d)(2)(E). The Government introduced numerous emails, texts, and other communications attributed to alleged KAC coconspirators as statements made during and in furtherance of a conspiracy. *See* ECF No. 271, Page ID 5099–5100. Once admitted, those communications helped the Government use Krueger's own words and conduct to characterize KAC's internal operations and Mr. Bregenzer's knowledge.

The defense could not use Rule 801(d)(2)(E) in reverse to introduce exculpatory statements by the same alleged coconspirator. After Krueger invoked, the defense therefore attempted to admit the contextual communications through other evidentiary routes. The resulting proffers show why his testimony was crucial to the defense:

First, Exhibit 899, an April 2018 email, reflected that Krueger discovered a smoking-cessation code on a date without an appointment, confronted the employee responsible, and obtained agreement that the entry was incorrect. The defense explained that the email showed chart review and audit controls operating during the charged period, as well as Mr. Bregenzer's delegation of billing accuracy to Krueger. ECF No. 266, Page ID 4736–38. The Court excluded it for lack of authentication and stated that it was not clearly exculpatory. *Id.*

14

Second, Exhibit 900, a June 2020 email, identified billing questions, tracking, and credentialing as Krueger's responsibilities. The defense proffered it to rebut the Government's claim that Mr. Bregenzer ignored obvious billing problems and to show that he assigned those subjects to a control-group member. *Id.*, Page ID 4739–42. The Court excluded it as hearsay and cumulative after the Government stipulated only that Krueger had "some responsibility over billing." *Id.* at 4742.

Third, Exhibit 903 described a billing-reconciliation process requiring review of codes and documentation, correction within 48 hours, and provider signoff. *Id.*, Page ID 4743–50. When the Government located a separate copy showing Krueger had emailed the policy, the Court recognized: "This could have been admitted through him. But he's not here, so we're not going to admit it." *Id.*, Page ID 4750. That ruling ties the exclusion directly to the blanket invocation.

Fourth, Exhibit 904 recorded Krueger's instruction that a code could be billed only when the provider performed the work and placed supporting notes in the chart: without supporting documentation, "we cannot bill even if it was done." *Id.*, Page ID 4750–53. The defense argued that this was direct evidence of a compliance instruction and the employees' reliance on Krueger for guidance. The Court excluded it as cumulative and not a business record. *Id.*

The defense also proffered emails concerning smoking-cessation coding, annual limits for 99214 billing, operational protocols, and Krueger's research and regulator contacts concerning counselor billing and the proposed BHG arrangement. *Id.*, Page ID 4722–31, 4761–68. Some postdated the charged period or the search; some presented separate authentication, hearsay, relevance, or Rule 403 questions. But the contemporaneous emails were not merely proof that Krueger held a generic billing role. They showed what he actually did: detect errors, assign responsibility, require documentation, research rules, and communicate compliance limits.

15

The asymmetry is central to materiality. The Government was permitted to select communications that advanced its conspiracy narrative under *Enright*, yet Krueger's invocation prevented the defense from authenticating and explaining communications that placed the same conduct in a compliance context. Rule 801(d)(2)(E) is not itself a defense hearsay exception, and the defense does not argue otherwise. After the government intervention made the declarant unavailable, the jury heard his alleged inculpatory communications without hearing the contemporaneous controls and corrective work that could have changed their meaning.

### 4. The witnesses and excluded proof were material to intent under both charged schemes.

The lost testimony was not collateral. The Government's proof treated KAC's operational and compliance failures as evidence that Mr. Bregenzer knowingly joined both the health-care-fraud scheme and the scheme involving electronic prescribing credentials. Krueger and Elrod were percipient KAC employees whom the defense proffered to explain compliance efforts, internal protocols, delegation, and communications. ECF No. 271, Page ID 5086–87. The emails above supplied concrete examples and bore directly on whether Mr. Bregenzer knew of unlawful conduct and intended to join either agreement.

The exchanged witness lists confirm the point: Mr. Bregenzer, Dr. Alzadon, and Ms. Vanhoose each expected both Krueger and Elrod to testify. They were therefore identified as key and material witnesses for all three defendants, not witnesses added after the Government rested. Counsel likewise placed on the record that the defense had received no prior indication that the witnesses would invoke, had relied on their expected testimony in presenting the case, and would have tried the case differently had their unavailability been known. *See* ECF No. 263, Page ID 4390–98; ECF No. 267, Page ID 4875–77. That reliance is concrete prejudice from the timing of the intervention and bears directly on materiality.

The Court concluded after trial that other witnesses or methods of authentication were available, that several proposed emails postdated the charged conspiracy or investigation, and that the proffer did not establish that Krueger's testimony was essential. ECF No. 320, Page ID 5623–27. The trial transcript, however, also shows that at least Exhibit 903 could have been admitted through Krueger and was excluded because "he's not here." ECF No. 266, Page ID 4750. Other rulings offered witnesses whom the defense had not used for foundation or accepted a generic stipulation that did not convey the substance of Krueger's controls. *Id.*, Page ID 4740–53. Whether those alternatives cured the loss of the person who authored, implemented, and could contextualize the communications is a close appellate question.

Nor can the materiality analysis isolate each email from the Government's use of other KAC communications. The combined rulings allowed the Government to rely heavily on insider messages to prove agreement and intent while preventing the defense from presenting the same insider's contemporaneous compliance activity. The jury was then instructed not to draw any inference from Elrod's invocation. ECF No. 268, Page ID 5054. Whether the individualized-inquiry rule, the circumstances producing the invocations, and the resulting evidentiary imbalance deprived Mr. Bregenzer of a meaningful opportunity to present his defense is substantial under *Pollard*.

If the Sixth Circuit resolves that constitutional question in Mr. Bregenzer's favor and finds prejudice, the remedy would be a new trial. Because the testimony and related evidence concerned KAC's compliance practices and Mr. Bregenzer's knowledge across both charged schemes, the issue reaches Count 14 as well as the health-care-fraud counts. It therefore independently supplies a question likely to result in a new trial on all counts if decided for the defense.

17

## VI.   CONTINUED RELEASE ON THE EXISTING CONDITIONS IS APPROPRIATE.

The Court need not fashion a new release plan. The existing order has worked for years. Mr. Bregenzer asks that the Court continue those conditions, stay execution of the custodial sentence under Rule 38(b)(1), and stay the September 29, 2026 self-surrender date while the appeal remains pending. He will continue to report as directed and comply with any additional condition the Court considers necessary.

### CONCLUSION

Mr. Bregenzer respectfully requests that the Court find that he has satisfied 18 U.S.C. § 3143(b)(1), continue his release on the existing conditions pending disposition of Sixth Circuit Case No. 26-5667, and stay execution of the sentence and the September 29, 2026 surrender date.

Respectfully submitted,

Dated: August 13, 2026

s/ *Ronald W. Chapman II*
Ronald W. Chapman II, Esq., LL.M.
MI Bar No. P73179
(*Admitted Pro Hac Vice*)
456 E. Milwaukee Avenue
Detroit, Michigan 48202
Telephone: (346) 242-7626
ron@chapmanandassociates.com

*Counsel for Defendant*

18

**CERTIFICATE OF SERVICE**

I certify that on August 13, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notice of the filing to all counsel of record.


s/ *Ronald W. Chapman II*
Ronald W. Chapman II, Esq., LL.M.