**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION – LEXINGTON**

**CRIMINAL ACTION NO. 5:23-cr-9-KKC-MAS**

**UNITED STATES OF AMERICA** **PLAINTIFF**

**v.** **UNITED STATES' OPPOSITION TO DEFENDANT MICHAEL BREGENZER'S MOTION FOR BOND PENDING APPEAL**

**JOSE ALZADON, M.D.,**
**MICHAEL BREGENZER, AND**
**BARBIE VANHOOSE** **DEFENDANTS**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ..... i

INTRODUCTION ..... 1

LEGAL STANDARD ..... 1

ARGUMENT ..... 2

I. The Pattern Health Care Fraud Jury Instruction Did Not Affect Bregenzer's Controlled Substances Conviction and Would Not Warrant Reversal of His Health Care Fraud Convictions ..... 2

A. An Error in the Health Care Fraud Instructions Will Not Impact Bregenzer's Conviction and Sentence on Count 14 and Cannot Support Bail Pending Appeal ..... 3

B. The *Singh* Error Here Does Not Warrant Reversal or Present a Close Question ..... 4

1. Bregenzer Invited Error Under *Singh* ..... 4

2. Bregenzer Cannot Show That the Error Affected His Substantial Rights or the Fairness, Integrity, or Public Reputation of Judicial Proceedings ..... 6

II. Bregenzer's Arguments Regarding *Enright*, Fifth Amendment Invocations, and Exclusion of Emails Do Not Raise a Substantial Question Likely to Result in Reversal ..... 10

A. Krueger and Elrod Were Entitled to Invoke Their Fifth Amendment Rights ..... 11

B. The Government Properly Raised These Issues Before This Court ..... 13

C. The Court Made Appropriate Evidentiary Rulings ..... 14

D. Krueger's and Elrod's Testimony Would Have Incriminated Bregenzer ..... 17

CONCLUSION ..... 18

CERTIFICATE OF SERVICE ..... 19

## INTRODUCTION

On March 20, 2025, following a three-week long trial, a jury found Defendant Michael Bregenzer guilty of conspiring to commit health care fraud (18 U.S.C. § 1349), eight counts of health care fraud (18 U.S.C. §§ 1347 and 2), and conspiring to unlawfully distribute controlled substances by using a registration number issued to another person (21 U.S.C. § 846). R. 226 at 1623-25. Bregenzer was sentenced on July 24, 2026, to 48 months' imprisonment on each count of conviction to be served concurrently. R. 405 at 6231. Bregenzer was also ordered to pay $812,881.09 in restitution and to forfeit $325,152.44 in proceeds derived from the health care fraud scheme. R. 405 at 6235-36, 6220. This Court continued Bregenzer's bond conditions and ordered him to self-surrender on September 29, 2026. R. 402 at 6224.

On August 13, 2026, Bregenzer filed a motion to remain on bond pending appeal. R. 417. For the reasons set forth below, Bregenzer's arguments for release pending appeal do not raise substantial questions of law or fact likely to result in a reversal, a new trial, a lower sentence, or no imprisonment, and his motion should be denied.

## LEGAL STANDARD

"The Bail Reform Act, 18 U.S.C. § 3143(b), creates a presumption against release pending appeal." *United States v. Chilingirian*, 280 F.3d 704, 709 (6th Cir. 2002). In rebutting this presumption, the burden of proof is on the defendant. *United States v. Pollard*, 778 F.2d 1177, 1181-82 (6th Cir. 1982). In this case, to establish entitlement to release pending appeal, Bregenzer must show that his appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in reversal, a new trial, or a sentence that either does not include

imprisonment or reduces the term of imprisonment below the expected duration of the appeal process. 18 U.S.C. § 3143(b)(1)(B).

In considering whether an appeal raises a substantial question of law or fact, a court first determines whether the question is "substantial" in the sense that it constitutes a "close question or one that could go either way." *Pollard*, 778 F.2d at 1182 (quoting *United States v. Powell*, 761 F.2d 1227, 1233-34 (8th Cir. 1985) (en banc)). "[M]ere identification of issues does not demonstrate that an appeal establishes a substantial question entitling the defendant to release pending appeal." *United States v. Moore*, 849 F.2d 1474 (6th Cir. 1988). If the court concludes that the question is in fact "substantial," it then must evaluate whether the question "is so integral to the merits of the conviction that it is more probable than not that reversal or a new trial will occur if the question is decided in the defendant's favor." *Pollard*, 778 F.2d at 1182 (internal quotations omitted).

Generally, an argument that would result in reversal of some, but not all, counts of conviction is insufficient "because if one count imposing imprisonment survives, the reason for allowing bail pending appeal, that a defendant should not be imprisoned under a legally erroneous sentence, disappears." *United States v. King*, 126 F.4th 440, 442 (6th Cir. 2025) (quoting *Powell*, 761 F.2d at 1233-34).

## ARGUMENT

Bregenzer's motion fails because he does not raise substantial questions of law or fact.[1]

### I. The Pattern Health Care Fraud Jury Instruction Did Not Affect Bregenzer's Controlled Substances Conviction and Would Not Warrant Reversal of His Health Care Fraud Convictions

At Bregenzer's trial in March 2025, this Court gave the Sixth Circuit's pattern instruction

[1] The government is not opposing Bregenzer's motion on the basis that Bregenzer is a flight risk or a danger to the community.

defining health care fraud, which both Bregenzer and the government included in their proposed jury instructions and to which neither party objected. In August 2025, the Sixth Circuit decided *United States v. Singh*, 147 F.4th 652, 658-59 (6th Cir. 2025), in which it held that the pattern jury instruction did not adequately instruct the jury that, to commit an act willfully, a defendant must act with the knowledge that his conduct is unlawful. As discussed further below, however, Bregenzer's invited error—even if the Sixth Circuit decides to review it—does not warrant reversal of his health care fraud convictions. More importantly in the context of a motion for release pending appeal, a *Singh* error would not alter Bregenzer's conviction for conspiring to unlawfully distribute controlled substances, Count 14, and so cannot support his motion regardless of the ultimate disposition of his claim.

### A. An Error in the Health Care Fraud Instructions Will Not Impact Bregenzer's Conviction and Sentence on Count 14 and Cannot Support Bail Pending Appeal

Bregenzer was sentenced to 48 months' imprisonment on each count of conviction, all to run concurrently. R. 405 at 6231. As he acknowledges, even if the Sixth Circuit were to reverse his convictions for conspiracy to commit health care fraud and health care fraud based on the pattern jury instruction given, such a holding would leave intact his conviction and sentence on Count 14—*i.e.*, conspiring to unlawfully distribute controlled substances through the use of a registration number issued to another person. R. 417 at 6314 (the health care fraud counts are "nine of the ten counts on which judgment was entered").

A challenge that will only affect a subset of a defendant's convictions cannot support his motion for bail pending appeal. *King*, 126 F.4th at 442 ("if one count imposing imprisonment survives . . . the reason for allowing bail pending appeal . . . disappears."); *see also Morison v. United States*, 486 U.S. 1306, 1306-07 (1988) (denying application for bond pending a certiorari

petition because "regardless of whether Morison has raised a 'substantial question' with respect to the propriety" of some of his convictions, he failed to do so with respect to all of the counts for which imprisonment was imposed).

Therefore, the Court should deny Bregenzer's motion because any purported defect with the jury instruction defining health care fraud does not entitle him to release pending appeal.

### B. The *Singh* Error Here Does Not Warrant Reversal or Present a Close Question

Even if an issue affecting only some of a defendant's convictions could support a motion for release pending appeal, Bregenzer's motion based on *Singh* should be denied. Bregenzer invited the error, which did not affect his substantial rights or the fairness or integrity of the proceedings, and does not present a close question.

#### 1. Bregenzer Invited Error Under *Singh*

Prior to trial, the government proposed jury instructions. R. 169. In relevant part and in accordance with Sixth Circuit Pattern Instruction 10.05, the government's proposed instruction defining health care fraud stated that "[a]n act is done 'knowingly and willfully' if it is done voluntarily and intentionally, and not because of mistake or some other innocent reason." R. 169 at 1053.

Bregenzer proposed the same instruction: his assertion that he "identified" the proposed health care fraud instruction as "insufficient" is misleading. R. 417 at 6312. Although Bregenzer chose to email his proposed instructions to the Court and counsel instead of docketing them, he did submit proposed instructions. *See* Exhibit A, Feb. 17, 2025, Email to Chambers Attaching Bregenzer Proposed Jury Instructions. Bregenzer proposed the pattern instruction, which defined an act done "knowingly and willfully" in the exact language the government also proposed. Exhibit B at 21, Bregenzer Proposed Jury Instructions.

At trial, instruction 13 defined the offense of health care fraud. R. 266 at 4777:16-18. Neither Bregenzer nor the government objected to the pattern instruction both parties had proposed, but Bregenzer did request an additional "civil rules instruction." R. 266 at 4778:5-8. Accordingly, and with the agreement of both parties, the jury was instructed that "[a]n act is done 'knowingly and willfully' if it's done voluntarily and intentionally and not because of a mistake or some other innocent reason." R. 268 at 5035.

Additionally, consistent with 18 U.S.C. § 1347(b) and with both the government's and Bregenzer's proposed instructions, the jury was instructed that "[t]he government need not prove that a defendant had actual knowledge of a statute or specific intent to commit a violate of the statute." R. 268 at 5035:24-5036:1; *see also* R. 169 at 1053 (government's proposed instructions); Ex. B at 21 (Bregenzer's proposed instructions).

Bregenzer objected to the government's proposed deliberate ignorance instruction and argued that because health care fraud "is a willful violation, it must be supported by proof that the defendant knew the pertinent facts and understood the illegality" and that "deliberate ignorance really just speaks to negate a knowledge component." R. 266 at 4820:7-21. Ultimately, the Court did not give the deliberate ignorance instruction. R. 224, Jury Instructions; R. 268 at 5052-64.

The Court did give Bregenzer's requested civil rules instruction, and the jury was further instructed:

> Now, during the trial, you may have heard some testimony or discussion of civil rules and regulations. I caution you that a violation of civil statutes, rules, or regulations is not a crime. This is not a civil case. The defendants are not on trial for civil violations. Even if you find that claims to Medicare, Medicaid, or other health care benefit programs were not allowed under the applicable statute, rules, and regulations, the defendants cannot be convicted of a crime simply because they violated a civil statute, rule, or regulation that might govern their conduct.
>
> However, evidence related to the nature of Medicare, Medicaid, or other health care benefit programs' rules and regulations may be considered by you in determining

> whether the defendants acted with criminal intent, that is whether they acted knowingly, willfully, and with the intent to defraud Medicare, Medicaid, or other health care benefits.

R. 268 at 5046:15-5047:5. In sum, then, this Court gave the health care fraud instruction proposed by both parties, omitted the deliberate ignorance instruction to which Bregenzer objected, and provided a supplemental instruction emphasizing that Bregenzer was not on trial for violating any civil rules or regulations, although his violation of such rules and regulations could be considered by the jury in determining whether he acted knowingly, willfully, and with the intent to defraud.

**2. Bregenzer Cannot Show That the Error Affected His Substantial Rights or the Fairness, Integrity, or Public Reputation of Judicial Proceedings**

"Usually, if a defendant fails to object to the jury instructions at trial, and she or he jointly submitted the challenged instruction with the government to the district court, appellate review is precluded under the invited-error doctrine." *United States v. Howard*, 947 F.3d 936, 944-45 (6th Cir. 2020) (citing *United States v. Sharpe*, 996 F.2d 125, 129 (6th Cir. 1993)). In instances in which invited error is reviewed, a defendant must show "(1) an error, (2) that is plain, (3) that affects his substantial rights, and (4) that 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *United States v. Clay*, 162 F.4th 757, 766 (6th Cir. 2025) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)). "In the context of jury-instruction error, this standard 'requires a finding that, taken as a whole, the jury instructions were so clearly erroneous as to likely produce a grave miscarriage of justice.'" *Id*. (quoting *United States v. Robinson*, 133 F.4th 712, 721 (6th Cir. 2025)).

After Bregenzer's trial concluded, the Sixth Circuit held in *Singh* that an instruction that "[a]n act is done 'knowingly and willfully' if it is done voluntarily and intentionally, and not because of mistake or some other innocent reason" failed to convey the scienter that the government must prove under the health care fraud statute. 147 F.4th at 658-59. Health care fraud

requires "an intent to defraud *and* willfulness." *Id*. at 659 (emphasis original). Willfulness, in turn, requires the government to prove that the defendant knew his conduct was unlawful. *Id*. at 658. The Sixth Circuit recognized that the instruction given in *Singh* was consistent with the Sixth Circuit Pattern Instruction 10.05 and was agreed upon by the parties. *Id*. And because it reversed Singh's convictions on other grounds, the Sixth Circuit declined to "grapple with the invited-error doctrine and apply the plain-error standard of review" and did not examine whether the error in the health care fraud instruction would require reversal. *Id*. at 659-60.[2]

In *Clay*, the Sixth Circuit "set aside passing judgment on Clay's invitation of the instructional errors and review[ed] under the plain error standard." 162 F.4th at 766. Considering the jury instructions in *Clay* together in context, the question became "whether Clay has shown a reasonable probability that a properly instructed jury would have concluded that he did not know it was illegal to knowingly execute a 'scheme to defraud' [a company's] employee health benefits plan 'in connection with the payment for healthcare benefits' with the intent to 'deceive or cheat' [the company]." *Id*. at 767. Clay's health care fraud scheme, at a high level, incentivized employees of a local Jeep plant to obtain compounded prescriptions from a doctor whom Clay had identified as willing to write such prescriptions and for which a pharmacy would pay a "commission," or a kickback from the insurance reimbursement. *Id*. at 763-65. Clay and his co-conspirator shared some of their "commission" with the patients who sought the prescriptions, which is how they had incentivized the patients to seek out the compounded medications in the first place. *Id*. At trial, Clay testified that he did not think the scheme was wrong and that, in his previous work in the pharmaceutical field, he had earned commissions and patients had sometimes received rebates for

[2] *United States v. Jenkins*, Nos. 23-3280 and 23-3281, 2025 WL 2946081 (6th Cir. Oct. 17, 2025), cited by Bregenzer at R. 417 at 6314, did not address the scienter requirement of jury instructions defining health care fraud but instead addressed the deliberate ignorance instruction given in that case.

their prescriptions. *Id*. at 767. The government presented evidence "suggesting that Clay knew the scheme was not above-board," including that Clay and his co-conspirator used fictitious names to recruit purported sales associates and that other pharmacies told Clay and his co-conspirator that they were not comfortable with the business and declined to participate. *Id*. On these facts, the Sixth Circuit determined that it was a "close question" whether Clay had shown "a reasonable probability that the error affected the outcome of the trial." *Id*. (citing *United States v. Marcus*, 560 U.S. 258, 262 (2010)). It determined that it need not resolve the issue, however, because Clay did not show a grave miscarriage of justice and "where it is a close question whether Clay has shown an effect on his substantial rights, and where he affirmatively invited the instructional error, we are not convinced that this is the rare case of 'manifest injustice' warranting the exercise of our discretion under the fourth prong [of plain-error review.]" *Id*. at 767-68.

The government concedes that the jury instruction defining health care fraud was erroneous, as it must under the Sixth Circuit's decision in *Singh*. But the similarities between Bregenzer's case and Clay's end at the third step in the plain-error analysis. Bregenzer has not, and cannot, show a "reasonable probability that a properly instructed jury would have concluded that he did not know it was unlawful to knowingly execute a scheme" to defraud Medicare and Medicaid. *See Clay*, 162 F.4th at 767.

Bregenzer's scheme was so obviously unlawful that multiple witnesses at trial testified in response to different questions that it was illegal for one doctor to see patients in the name of another doctor and this Court admonished the jury that they should take their instructions on the law from the court. *See* R. 244 at 1865:6-7 (Tayla Collett, former KAC front desk worker, testified "just from my own personal knowledge that any doctor seeing another person's patients is illegal"); R. 255 at 3050:14-22 (Tiffany Wright, nurse practitioner, testified that she would never

see a patient and bill under Ricardo Alzadon's name "[b]ecause that's illegal"); R. 258 at 3412:12-19 (Dwight Mussleman testified that his company, BHG, would have wanted to know if a clinic it was considering acquiring had one doctor seeing another doctor's patients "[b]ecause that's illegal"). In addition, Kristy Berry testified that Dr. Cheryl McClain had told Berry and Bregenzer that "it was fraud, that Dr. Alzadon could not be seeing his dad's patients, said the way telehealth was being performed was illegal, it wasn't right." R. 252 at 2548:18-20. Dr. McClain herself testified that she told Bregenzer that KAC should self-report its fraudulent billing and that McClain copied Bregenzer on emails in which she sought to correct billing in her name for services she had not provided. R. 245 at 2086-98 (describing call in which she recommended that KAC self-report and explaining emails in which she flagged falsified pre-populated notes and billing for services not rendered).

Bregenzer asserts that the invited error in *Clay* is absent here while "the question *Clay* called close remains." R. 417 at 6313. Neither assertion is true. Bregenzer invited the error, just as Clay did, when he proposed the pattern instruction defining health care fraud. Equally, Bregenzer fails to address the stark factual distinctions between the nature of Clay's scheme and the evidence at Clay's trial and his own. Bregenzer's fraud did not turn on the permissibility of commissions or rebates or another debatable payment structure. Bregenzer and his co-defendants submitted claims to Medicare and Medicaid for services that were not provided, were not provided at the level at which they were billed, and were billed under the name of Dr. Ricardo Alzadon when in fact the patients had been seen by Dr. José Alzadon.

Bregenzer does not argue, nor could he, that he thought it was permissible for KAC to bill Medicare and Medicaid for services that were not performed, or services that were performed by one doctor and billed as though they were performed by another. The evidence at Bregenzer's trial

did not show a "close" call; it showed that everyone who encountered these misrepresentations knew they were unlawful. Bregenzer merely claims without citation that "he relied on medical, billing, and compliance personnel and lacked knowledge that KAC's conduct was unlawful." R. 417 at 6313. In fact, the trial evidence was that Bregenzer "knew everything going on in that business inside and out." R. 252 at 2544:9-10 (Berry). In Bregenzer's case, the erroneous instruction with respect to the definition of "willfully" did not affect his substantial rights, much less present the "rare and egregious" case warranting correction under the fourth prong of plain-error review.

Thus, even if the Sixth Circuit should decide to review this invited error, it will not present a close question or a substantial question of law or fact and cannot support a motion for release pending appeal under 18 U.S.C. § 3143(b).

## II. Bregenzer's Arguments Regarding *Enright*, Fifth Amendment Invocations, and Exclusion of Emails Do Not Raise a Substantial Question Likely to Result in Reversal

Bregenzer argues that, separate from the *Singh* issue, he should remain on bond pending appeal because of the "close question" posed by evidence and potential testimony tied to two co-conspirators who did not testify at trial after invoking their Fifth Amendment rights against self-incrimination: Trouper Krueger and Kristi Elrod. R. 417 at 6314-6321. Specifically, Bregenzer contends that the trial record presents close questions regarding: (1) the "individualized inquiry" rule; (2) the propriety of the government's conduct in raising Fifth Amendment considerations relating to Krueger and Elrod; and (3) the material impact and purported evidentiary "asymmetry" resulting from the lack of testimony from Krueger and Elrod, and the inability to introduce exhibits through Krueger. *Id.*

These issues have been litigated extensively. As this Court has made clear, Bregenzer is on the wrong side of settled law. These issues are not "close" questions. As such, Bregenzer cannot satisfy his burden and overcome the presumption against release pending appeal.

### A. Krueger and Elrod Were Entitled to Invoke Their Fifth Amendment Rights

Krueger and Elrod faced criminal exposure and therefore were entitled to invoke their Fifth Amendment privilege against self-incrimination. Throughout the government's presentation of evidence at trial, Krueger and Elrod regularly came up as being involved in the charged conduct, including through witness testimony and multiple incriminating communications. *See* R. 298 at 5301 (collecting citations). Indeed, by Bregenzer's own admission, "[w]itness after witness" at trial implicated Krueger in the fraud scheme. R. 271 at 5090. As the Court noted, "at the time the government raised its concerns regarding these witnesses testifying, the Court had already made findings under *United States v. Enright*, 579 F.2d 980 (6th Cir. 1978) that Krueger and Elrod were unindicted coconspirators." R. 320 at 5620 (citing R. 263 at 4381-4387).

Furthermore, at trial, the Court did not allow Krueger and Elrod to invoke their Fifth Amendment privileges "based solely on the[ir] say-so . . . that they might be incriminated if they testified in this case." R. 320 at 5622. Rather, the Court made this determination "after hearing all the evidence of the government's case-in-chief and finding that both Elrod and Krueger were unindicted coconspirators in a conspiracy for which it is undisputed the applicable statute of limitations had not run." *Id*. Furthermore, the Court appointed independent counsel for both Krueger and Elrod and directed the government to provide both with a packet of relevant materials to review. *Id*. at 5622-5623. Counsel for Krueger and Elrod reviewed the materials, conferred with their respective clients, and advised the Court that both would invoke their Fifth Amendment right against self-incrimination. *Id*. at 5623. Thus, both the Court and independent counsel separately

determined that Elrod and Krueger had criminal exposure and therefore had a legitimate basis to invoke their Fifth Amendment rights.

Nonetheless, in the instant motion, Bregenzer again takes issue with the fact that, according to him, Krueger and Elrod made a "blanket invocation" of their Fifth Amendment privileges against self-incrimination. Bregenzer cites the Sixth Circuit's "'longstanding rule' . . . that a witness ordinarily must take the stand and answer individualized questions to invoke the privilege." R. 417 at 6314-6315 (citing *In re Flint Water Cases*, 53 F.4th 176, 210 (6th Cir. 2022)). But he acknowledges that the general rule favoring question-by-question invocations does not apply where the record establishes a "witness's 'clear entitlement' to invoke because the court already knows reasonable cause exists." R. 417 at 6315 (citing *In re Flint Water Cases*, 53 F.4th at 210). Nonetheless, Bregenzer insists that "the boundary between the general rule and the clear-entitlement exception is close enough [in this case] to warrant appellate resolution." *Id*. at 6315.

Bregenzer is wrong. First, as this Court explained in detail in its opinion denying the defendants' motions for a judgment of acquittal and for a new trial, the "clear entitlement" exception is well-settled in the Sixth Circuit — *i.e.*, a blanket assertion of the Fifth Amendment privilege against self-incrimination is entirely appropriate where the witness has a "clear entitlement" to claim the privilege. R. 320 at 5623 (citing multiple cases). As the Sixth Circuit has repeatedly confirmed, a trial court need not conduct a question-by-question inquiry where "reasonable cause" to invoke the privilege exists. *Id.* Indeed, the authorities Bregenzer cites affirm this proposition. *See* R. 417 at 6314-6315 (collecting cases).

Additionally, as detailed above, the Court made an extensive record at trial. Where both a court and independent counsel have conducted their own analysis and concluded that an individual had a risk of self-incrimination, the propriety of a blanket waiver is not a "close" question. Indeed,

the only evidence Bregenzer can identify to try to make this a "close" question is the fact that Krueger invoked his Fifth Amendment rights in response to preliminary, background questions. But Bregenzer's objection to the manner in which Krueger invoked his Fifth Amendment privileges (presumably based on advice from his counsel) does not convert a reasoned, evidence-based decision into a close call. In short, with or without an individualized inquiry, the result would have been the same—on the advice of independent counsel, Krueger and Elrod would have invoked their Fifth Amendment rights in response to substantive questions, and the evidence leading to Bregenzer's conviction would not have been affected.

**B. The Government Properly Raised These Issues Before This Court**

Not only did the government raise the "valid concern" that both Krueger and Elrod faced potential criminal liability, but the government also raised the fact that "Krueger was represented by attorney Anna Whites, who was also KAC's counsel." R. 320 at 5620-5621. Accordingly, "the government raised an issue as to whether Whites had a conflict representing both KAC and Krueger." *Id*. at 5621. As the government previously explained (*see* R. 298 at 5299-5307), the government flagged the issue for the first time in a December 2024 filing (R. 117) and again at trial. The government took no position on the existence of a potential conflict, and like the Court and Defendants, the government did not know whether Whites would ultimately determine if she had a conflict. The fact that she did validates the government's decision to bring the issue to the Court's attention.

Bregenzer continues to object to the government's approach, arguing that the "manner and timing of the government's intervention substantially interfered with the witnesses' free choice to testify." R. 417 at 6316. In support thereof, Bregenzer repeats the same arguments he made during and after trial—the government proffered with Krueger when he was represented by his initial counsel, Anna Whites, but allegedly waited to flag the issue of a potential conflict in an effort to

engineer the appointment of replacement counsel and thereby cause "strategic delay" and "substantial interference" with Krueger's ability to testify on behalf of Bregenzer and his co-defendants. *Id*. at 6317-6318. Bregenzer further argues that "[t]he lost testimony was not collateral" and that, because all three Defendants expected Krueger and Elrod to testify, their "reliance is concrete prejudice from the timing of the intervention and bears directly on materiality." *Id*. at 6320.

This matter has been litigated extensively—the Court previously considered the parties' arguments and ruled in favor of the government, noting that Bregenzer "cites no case law to support" his argument that the government merely raising a potential conflict for the Court's attention "constitutes improper interference." R. 320 at 5621. Citing *Davis v. Straub*, 430 F.3d 281, 287 (6th Cir. 2005)—which in turn cited the ABA's model guidelines—the Court explained that there is precedent for the government advising the court of a witness's Fifth Amendment considerations in the middle of trial and for the court to promptly appoint independent counsel to advise the witness. R. 320 at 5621-5622.

In the instant motion, Bregenzer still does not cite any authority to support his position that the government notifying a court of a witness's Fifth Amendment rights amounts to interference with a defendant's rights. As such, this Court should reject Bregenzer's attempt to transform his conclusory assertions into a close question under the law.

### C. The Court Made Appropriate Evidentiary Rulings

At trial, the government built its case on admissible testimony and documentary evidence, including testimony from KAC employees and patients and corroborating documents, such as communications to or from Bregenzer and communications involving Krueger and Elrod. Similarly, the government objected to Bregenzer's introduction of documents that were self-

serving hearsay, cumulative, or otherwise inadmissible under the Rules of Evidence. The Court undertook a "painstaking[]" review of those objections and largely sustained them. R. 320 at 5625.

Dissatisfied with that process, Bregenzer argues that the Court's evidentiary rulings created a "one-sided evidentiary record." R. 417 at 6318. Bregenzer insists that the "asymmetry is central to materiality" in that the government was able to introduce incriminating Krueger statements pursuant to FRE 801(d)(2)(E), but the government's purported intervention precluded the jury from "hearing the contemporaneous controls and corrective work that could have changed the[] meaning [of the communications that were admitted into evidence]." *Id*. at 6320. In support thereof, Bregenzer cites four exhibits—Exhibits 899, 900, 903, and 904—that he sought to introduce after Krueger invoked his Fifth Amendment rights, and that the Court excluded. *Id*. at 6318-6319. Bregenzer claims that these four exhibits were exculpatory and would have balanced an otherwise unduly incriminating record born out of the government's alleged interference.

Bregenzer's arguments are misguided.

While Bregenzer notes that the Court made findings relating to co-conspirator statements under *Enright* and FRE 801(d)(2)(E), he does not appear to challenge those rulings or otherwise suggest that they pose a close question on appeal.

Instead, Bregenzer focuses primarily on four exhibits he initially sought to admit through Krueger and later tried to admit "through other evidentiary routes." R. 417 at 6318. In particular, Bregenzer focuses on Exhibit 903, noting that the Court stated: "This could have been admitted through [Krueger]. But he's not here, so we're not going to admit it." R. 417 at 6319, 6321 (quoting R. 266 at 4750). Bregenzer describes Exhibit 903 as a KAC document reflecting "a billing-reconciliation process requiring review of codes and documentation, correction within 48 hours, and provider signoff."

Bregenzer mischaracterizes Exhibit 903—even if it was admitted, it likely would have had minimal impact on the weight of the evidence against Bregenzer. Exhibit 903 is a job description and bonus incentive plan from July 2020 (i.e., the last few months of the conspiracy).[3] It is far from a policy document that sets forth best practices for billing. Rather, the incentive plan focuses on "[p]atient growth," including offering "a $250 bonus per month" for "[m]aintaining a positive flow of new patients into the clinic each month" and "[m]aintaining a current wait list of patients seeking treatment at KAC." Of course, offering a financial incentive for patient volume is hardly exculpatory in a case involving fraud through overbilling. Additionally, despite Bregenzer's description of Exhibit 903, it does not reference the "review of codes and documentation," "provider signoff," or any safeguards to ensure that medical services were accurately coded and reviewed by providers prior to billing.

Bregenzer's reliance on Exhibits 899, 900, and 904 is similarly misplaced. The Court properly ruled that the documents were inadmissible as self-serving hearsay and/or cumulative, such that Krueger's testimony would not have affected their admissibility. R. 266 at 4736-4738; 4739-4742; and 4750-4753. Additionally, as with Exhibit 903, Exhibits 899 and 904 do not include or reference Bregenzer, so the potential exculpatory effect is attenuated and speculative. This Court already made a similar finding: "[m]ost importantly, none of the proposed exhibits were exculpatory to Bregenzer. Bregenzer does not argue that they are. Instead, he argues they were exculpatory as to Krueger." R. 320 at 5625.

At bottom, a straightforward application of the Federal Rules of Evidence does not raise a "substantial" or "close" question. And the admission of a bonus incentive plan consistent with the

[3] Despite the fact that the document is dated July 24, 2018, it references August 1, 2020, and it appears to have been transmitted in July 2020. The reference to 2018 is likely a typo. R. 266 at 4749-4750.

fraudulent overbilling scheme would not affect the overwhelming weight of evidence against him, such that Bregenzer can overcome the presumption against release pending appeal.

As with the other issues he has raised regarding Krueger and Elrod's testimony and their Fifth Amendment rights, Bregenzer's arguments are at odds with the law and trial record. And simply re-raising the same meritless issues does not make those matters "substantial" questions of law.

### D. Krueger's and Elrod's Testimony Would Have Incriminated Bregenzer

Even if Krueger and Elrod had testified, their testimony likely would not have affected the outcome of the trial. *Pollard*, 778 F.2d at 1182. As the government previously explained (*see* R. 298 at 5299-5300), testimony from Krueger and Elrod likely would have incriminated Bregenzer. In addition to their own involvement and potential exposure, both identified Bregenzer as the driving force behind KAC's improper billing practices. For example, Elrod admitted in a recorded interview that, among other things, Bregenzer pressured her to generate extended or unnecessary counseling and case-management services to increase revenue. R. 298 at 5299. And Krueger told the government that, among other things, Bregenzer was "very resistant to any change that would be financially hard on him." *Id*. at 5299. Indeed, this Court found that "Bregenzer has not identified how Krueger's testimony was essential to his defense. He argues, at most, that Krueger's testimony might have been exculpatory as to Krueger." R. 320 at 5624.

Therefore, as with the other witnesses that Bregenzer presented at trial, any testimony from Elrod and Krueger likely would not have affected the jury's verdict.

## **CONCLUSION**

For the foregoing reasons, this Court should deny Bregenzer's Motion for Bond Pending Appeal and proceed with imposition of Bregenzer's sentence pending resolution of his appeal.

Respectfully submitted,

JASON PARMAN
U.S. ATTORNEY, EASTERN DISTRICT OF KENTUCKY

COLIN M. MCDONALD
ASSISTANT ATTORNEY GENERAL
NATIONAL FRAUD ENFORCEMENT DIVISION

By: *s/ Sarah Edwards*
Sarah Edwards
Trial Attorney
U.S. Department of Justice
National Fraud Enforcement Division
Health Care Fraud Section

Abdus Samad Pardesi
Trial Attorney
U.S. Department of Justice
Criminal Division
White Collar and Corporate Enforcement Section

## CERTIFICATE OF SERVICE

On August 27, 2026, I electronically filed the foregoing through the ECF system, which will send the notice of electronic filing to all counsel of record.

*/s/ Sarah Edwards*
Trial Attorney