**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

CRIMINAL ACTION NO. 5:23-cr-00009

UNITED STATES OF AMERICA PLAINTIFF,

v. **DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR BOND PENDING APPEAL**

MICHAEL BREGENZER DEFENDANT.

---

Defendant Michael Bregenzer respectfully submits this reply in support of his motion for continued release pending appeal. ECF No. 417. The United States does not dispute that Mr. Bregenzer is neither a flight risk nor a danger, and it does not contend that the appeal was taken for delay. ECF No. 419, Page ID 6330–6331 n.1. The dispute is therefore limited to whether the appeal presents a substantial question likely to result in qualifying relief under 18 U.S.C. § 3143(b)(1)(B). It does.

The Government's response, ECF No. 419, to Mr. Bregenzer's motion for continued release pending appeal (the "Response") concedes that Instruction 13 misstated the willfulness element of health-care fraud under *United States v. Singh*, 147 F.4th 652 (6th Cir. 2025). It nevertheless treats a pretrial proposal as dispositive while omitting the later, specific objection in which counsel told the Court that health-care fraud required proof that Mr. Bregenzer understood the illegality of the charged conduct. ECF No. 266, Page ID 4819–21. That sequence distinguishes *United States v. Clay*, 162 F.4th 757 (6th Cir. 2025), where the defendant stipulated at trial to the challenged instruction. And even *Clay* called prejudice from the same error a "close question." *Id*. at 767.

The Response also understates the second appellate issue. The question is not whether a prosecutor may ever alert a court to a witness's Fifth Amendment rights. It is whether, on this record, the eleventh-hour intervention, blanket invocations, absence of a question-specific judicial determination, and resulting one-way evidentiary record deprived the defense of material testimony. The trial record shows that counsel expressly requested question-by-question invocation, that the Court said the issue was preserved, and that the later order denying defendant's motions for a judgment of acquittal, or in the alternate, new trial (the "Post-trial Order") stated the opposite. Compare ECF No. 264, Page ID 4564–65, with ECF No. 320, Page ID 5623. The record also shows that Exhibit 903 "could have been admitted through" Krueger and was excluded because "he's not here," contrary to the Response's claim that his testimony would not have affected admissibility. ECF No. 266, Page ID 4749–50. Those are appellate questions, not a request that this Court reverse itself now. Under *United States v. Pollard*, 778 F.2d 1177, 1181–82 (6th Cir. 1985), they need only be close.

## ARGUMENT

### I. THE GOVERNMENT CONCEDES THE NON-MERITS REQUIREMENTS FOR CONTINUED RELEASE.

Section 3143(b) presumes detention after conviction, but it authorizes release when the defendant proves that he is not likely to flee or pose a danger, the appeal is not taken for delay, and the appeal raises a substantial question likely to result in reversal, a new trial, a noncustodial sentence, or a reduced term shorter than the expected appellate process. 18 U.S.C. § 3143(b)(1). A substantial question is a "close question or one that could go either way"; the Court need not predict that its own ruling will be reversed. *Pollard*, 778 F.2d at 1181–82 (quoting *United States v. Powell*, 761 F.2d 1227, 1233–34 (8th Cir.1985).

The government expressly declines to contest flight risk or danger and does not argue delay. ECF No. 419, Page ID 6330–6331 n.1. Mr. Bregenzer has complied with release conditions for years, remained on release after the verdict and sentencing, and was permitted to self-surrender. ECF Nos. 402, 421. The only issue is whether either appellate question is substantial and likely to produce qualifying relief if resolved for him.

## II. THE SINGH ISSUE IS SUBSTANTIAL.

### A. The trial objection distinguishes *Howard* and *Clay*.

The Response's invited-error theory stops the charge conference too early. When the Court first reached draft Instruction 13, counsel initially stated that he had no objection and renewed his request for the civil-rules instruction. ECF No. 266, Page ID 4777–78. Later in the same conference, however, the Court asked whether counsel had "another substantive objection." Counsel answered yes and stated: "Health care fraud requires a willful violation, not simply knowledge"; the government had to prove that the defendant "knew the pertinent facts and understood the illegality." *Id*., Page ID 4819–20. He repeated that the defendant must have "[k]new[n] the illegality of the pertinent facts" and warned that a lesser standard would permit a "red-flags prosecution and conviction." *Id*., Page ID 4820–21.

Federal Rule of Criminal Procedure 30(d) asks whether, before the jury retires, a party informed the court of the specific objection and its grounds. Counsel did exactly that. The objection identified the defect later recognized in *Singh*: the distinction between knowledge of facts and knowledge that the conduct was unlawful. *Singh*, 147 F.4th at 658–59. The Court's next question connected the objection to deliberate ignorance, but that did not erase counsel's broader and repeated statement of the governing willfulness standard. Whether the objection preserved the erroneous definition in Instruction 13 is, at minimum, a close question.

*Howard* and *Clay* involved materially different records. *Howard* emphasized that the defendant "failed to object" and jointly submitted the instruction. *United States v. Howard*, 947 F.3d 936, 944–45 (6th Cir. 2020). *Clay* stated that the defendant "stipulated at trial to the instructions he now challenges." 162 F.4th at 765. Here, the defense made a later substantive objection before deliberations and articulated the precise legal rule *Singh* adopted. A pretrial proposal does not answer whether the later objection withdrew assent or preserved the point under Rule 30(d).

Nor does the record establish an intentional relinquishment of a known right. *See United States v. Montgomery*, 998 F.3d 693, 697–99 (6th Cir. 2021) (distinguishing waiver, invited error, and forfeiture). *Singh* had not yet been decided, and both sides relied on a then-current pattern instruction. At most, the record presents the "hazy border" described in *Montgomery*. *Id*. at 698. If the Court of Appeals treats the issue as invited error, it retains discretion to review when the interests of justice demand it, particularly when the government was equally responsible and the error concerns the constitutional requirement that the jury find every element beyond a reasonable doubt. *Id*. at 698–99; *Howard*, 947 F.3d at 945. The government proposed the same defective language, ECF No. 169, Page ID 1052–53, and now concedes it was error. ECF No. 419, Page ID 6337.

**B. Singh forecloses the government's curative-instruction argument.**

There is no dispute about error. Instruction 13 told the jury that an act is done "knowingly and willfully" if done voluntarily and intentionally and not because of mistake or another innocent reason. ECF No. 268, Page ID 5035. *Singh* held that materially identical language "failed to convey the scienter that the government must prove" under § 1347 because willfulness requires knowledge that the conduct was unlawful. 147 F.4th at 659.

The additional instructions did not cure that defect. The civil-rules instruction told jurors that a civil violation alone was not a crime and that they could consider rules and regulations in deciding whether the defendants acted knowingly, willfully, and with intent to defraud. ECF No. 268, Page ID 5046–47. It never defined willfulness or told jurors that Mr. Bregenzer had to know the charged conduct was unlawful. It merely reused the undefined term. *Singh* likewise rejected the proposition that an intent-to-defraud instruction fills the gap: intent to deceive or cheat is not the same as knowledge of unlawfulness, and treating the two as interchangeable reads willfulness out of § 1347. 147 F.4th at 658–59.

The separate § 1347(b) instruction also does not help the government. That provision relieves the government of proving knowledge of the particular statute or a specific intent to violate that statute. It does not eliminate the requirement that the defendant know his conduct was unlawful. *Clay* expressly recognized both propositions in the same passage. 162 F.4th at 766. The Response's discussion of the civil-rules instruction and § 1347(b) therefore confirms that the jury never received the instruction *Singh* requires.

**C. *Clay* confirms that prejudice is a close, record-dependent question.**

*Clay* does not hold that the *Singh* error is harmless. It held that prejudice was a "close question" even though the record included fictitious recruiting names, payments to patients, and pharmacies that refused to participate because they were uncomfortable with the arrangement. 162 F.4th at 763–67. The panel declined to resolve the third plain-error prong and rested its disposition on the fourth prong, emphasizing that *Clay* had stipulated at trial to the instruction. *Id*. at 767–68.

This record is different in ways that make the question at least as close. Mr. Bregenzer's defense was that he relied on medical, billing, and compliance personnel and did not know that

KAC's conduct was unlawful. The government answers with selected testimony that certain conduct was "illegal," Dr. McClain's warnings, and Berry's broad assertion that Mr. Bregenzer knew everything about the business. ECF No. 419, Page ID 6337–39. But that is the disputed evidence the jury was required to evaluate under the correct *mens rea* standard. It does not establish that a properly instructed jury necessarily would have found knowledge of unlawfulness, particularly where the defense challenged Berry's credibility and sought to present contemporaneous compliance evidence through Krueger.

The question under § 3143(b) is not whether Mr. Bregenzer has already proved prejudice. It is whether reasonable jurists could debate whether the omitted element affected the verdict. *Pollard*, 778 F.2d at 1182. *Singh* establishes the error; *Clay* describes the same prejudice question as close; and the preservation record here is materially stronger than *Clay*'s. That satisfies the substantial-question threshold.

### D. *King* does not dispose of the motion because the witness issue reaches Count 14.

The government correctly observes that the *Singh* issue, standing alone, concerns the health-care-fraud counts. *United States v. King* states the general rule that an issue affecting fewer than all imprisonment counts ordinarily will not support release if an independent imprisonment count will survive. 126 F.4th 440, 442 (6th Cir. 2025). But the motion does not rest on *Singh* alone. The witness-interference and blanket-invocation issue concerns the defense case as a whole, including Count 14.

Count 14 required proof of a knowing agreement to use another person's controlled-substance registration number and knowledge or intent that the dispensing or distribution was unauthorized. ECF No. 268, Page ID 5039–43. Krueger and Elrod were KAC insiders whom the parties treated as actors in both charged schemes. Their expected testimony

concerned KAC's operating structure, clinical and billing responsibilities, compliance controls, communications, and Mr. Bregenzer's knowledge. The defense proffered that their testimony would rebut the government's claim that he knowingly directed unlawful practices. The Court itself accepted, during trial, that the defense could show that the testimony was favorable, material, and noncumulative. ECF No. 264, Page ID 4485–86. If the Sixth Circuit decides that the loss of this testimony and the resulting evidentiary imbalance require a new trial, the remedy reaches Count 14. *King* therefore does not resolve the motion.

## III. THE LOSS OF KRUEGER AND ELROD PRESENTS A SUBSTANTIAL ALL-COUNT QUESTION.

### A. The application of the clear-entitlement exception is fact-bound and debatable.

The parties agree on the governing rule. The Sixth Circuit's longstanding rule ordinarily requires a witness to take the stand and invoke the privilege in response to individualized questions. *In re Flint Water Cases*, 53 F.4th 176, 210 (6th Cir. 2022); *United States v. Highgate*, 521 F.3d 590, 593–94 (6th Cir. 2008). A blanket invocation may be accepted where the record establishes a clear entitlement because the court already knows reasonable cause exists. *In re Flint Water Cases*, 53 F.4th at 210; *United States v. McAllister*, 693 F.3d 572, 583–84 (6th Cir. 2012). But in either setting the district court must "actually decide" whether the witness's silence is justified. *In re Flint Water Cases*, 53 F.4th at 210.

The Response treats an *Enright* admissibility finding, an unexpired limitations period, and counsel's advice as automatically satisfying that judicial duty. ECF No. 419, Page ID 6340–42. That is the disputed appellate question. An *Enright* finding determines by a preponderance whether statements may be admitted under Rule 801(d)(2)(E); it does not itself identify the offense a witness reasonably fears, determine the incriminating tendency of each

subject, or establish that every answer is privileged. Likewise, independent counsel's prudent advice does not substitute for the court's obligation to determine the legitimacy and scope of the privilege. *Highgate* reversed the premise that a witness's say-so alone establishes the hazard, even where the record supplied a colorable basis for concern. 521 F.3d at 593–94.

The breadth of the invocations illustrates the issue. Krueger invoked when asked whether he had ever worked at KAC and stated that he would invoke to every question. ECF No. 266, Page ID 4711–13. Elrod likewise did not provide substantive testimony. The Court did not identify particular areas of exposure or decide whether discrete subjects, including authentication and compliance procedures, could be answered without a real danger of incrimination. Whether the *Enright* ruling and generalized exposure made every proposed answer clearly privileged is a fact-intensive question that could go either way.

### B. The issue was expressly preserved, and the Post-trial Order misstated that record.

The Response relies on the Post-trial Order's statement that "no defendant requested" a question-by-question inquiry. ECF No. 320, Page ID 5623. The Day 12 transcript says otherwise. Counsel stated that, if preservation required putting Elrod on the stand to invoke "for every question," "then that's what I'll ask for. So we're asking for it." ECF No. 264, Page ID 4564–65. The Court answered that the issue was preserved, initially said "[w]e'll do it," and then stated that it would not permit questioning "question by question by question." *Id*. at 4566.

That conflict is not collateral. Appellate review often turns on whether a party requested the procedure later claimed as error. Here, the contemporaneous transcript records the request and an assurance of preservation; the Post-trial Order rests in part on the opposite premise. At a minimum, whether the issue was preserved and whether the court applied the individualized-inquiry rule on an accurate factual premise are substantial questions.

**C. The timing and manner of the intervention distinguish *Davis*.**

The government recasts the claim as a categorical objection to notifying a court of a witness's rights. That is not the claim. *Davis v. Straub* held, on deferential habeas review, that a prosecutor did not unconstitutionally intimidate a witness merely by telling the trial court that the witness was a suspect and should be advised of his rights; the judge briefly questioned the witness and appointed counsel. 430 F.3d 281, 287–90 (6th Cir. 2005). *Davis* contrasted that neutral procedure with conduct that uses unnecessarily strong terms or threats to substantially interfere with a witness's free choice. *Id*. at 287–88 (discussing *Webb v. Texas*, 409 U.S. 95 (1972), and *United States v. Thomas*, 488 F.2d 334 (6th Cir. 1973)).

This record presents a materially different combination of timing and conduct. When defense counsel objected that the government was insinuating culpability on the eve of testimony, the government stated that it was "not insinuating culpability." ECF No. 263, Page ID 4391–92. Yet its asserted basis was that the Court had treated Krueger and Elrod as unindicted coconspirators and the limitations period remained open. *Id*., Page ID 4389–91; ECF No. 419, Page ID 6340. The tension between those positions is relevant to whether the intervention functioned as a neutral warning or communicated a concrete threat of prosecution.

The government also arrived with a prepared package for newly appointed counsel containing interview reports, Elrod's recorded interview, and a curated list of admitted exhibits involving Krueger or Elrod. ECF No. 263, Page ID 4392–93. That preparation may have been prudent, but it also shows that the intervention was anticipated. It supports, rather than

forecloses, an inference that the issue could have been raised before the defense case reached its final witnesses.

The longer timeline makes the timing question sharper. The government proffered Krueger in July 2024 while he was represented by Anna Whites. When asked at trial whether a proffer letter existed, whether Whites signed it, and whether there was a record of any conflict discussion, government counsel said she would have to check the letter, her email, and the written record. ECF No. 263, Page ID 4397–98. The record cited in the Response does not identify the result of that check. The government simultaneously acknowledged that it already knew Whites was connected to KAC, and stated that the issue had recently "crystallized." *Id.*, Page ID 4398–99.

But by December 3, 2024, the government had filed ECF No. 117 specifically describing overlapping attorney relationships and potential third-party privilege conflicts. It requested a January 15, 2025 deadline so it could investigate those relationships and avoid trial disruption or a continuance. ECF No. 117, Page ID 418–19, 422, 425–26. The present Response itself says that filing first flagged the *Whites* issue. ECF No. 419, Page ID 6342. Whether the government, with that knowledge and its stated concern about avoiding delay, could wait until the final defense witnesses were about to testify and then trigger replacement counsel and blanket invocations is not answered by *Davis*. It presents the contextual inquiry *Davis* and *Webb* require.

**D. The record establishes reliance, materiality, and concrete prejudice.**

The government minimizes the witnesses as merely favorable to themselves. The trial record shows otherwise. Bregenzer's January 21, 2025 witness list identified Elrod and Krueger as witnesses 48 and 49. During trial, all three defense teams treated the remaining witnesses as relatively joint, with counsel explaining that each defendant had a different scope of examination

and agreeing that Mr. Chapman would lead to avoid repetition. ECF No. 263, Page ID 4388–89. The witnesses were subpoenaed, Krueger traveled from Seattle to testify, and the defense represented that there had been no prior indication that either would refuse. ECF No. 266, Page ID 4853–55; ECF No. 267, Page ID 4875–77; ECF No. 263, Page ID 4390–98.

Counsel also made the reliance and prejudice explicit. He told the Court that Elrod and Krueger were vital and that he "would have tried this case differently" had he known they would not testify. *Id.*, Page ID 4485. After Krueger invoked on the final day of the defense case, counsel explained that there was no "rewind button"; Krueger had been the intended foundation witness for the emails, and the defense could not retroactively restructure its examinations and proof. ECF No. 266, Page ID 4861–63. That is concrete trial reliance, not post-verdict speculation.

Exhibit 903 supplies a specific example. The Response calls it only a job description and incentive plan and says it did not mention code review, documentation review, or provider signoff. ECF No. 419, Page ID 6345. But the motion summarized the defense's trial proffer, not merely the exhibit's labels. The document included a "Billing Reconciliation" responsibility and a requirement that reconciliation items be returned within 48 hours. Counsel proffered that Krueger would explain reconciliation as reviewing codes and documentation and ensuring documentation supported the codes. ECF No. 266, Page ID 4743–46. Most importantly, after the government located a copy transmitted by Krueger, the Court stated: "This could have been admitted through him. But he's not here, so we're not going to admit it." *Id.*, Page ID 4749–50. The Response's assertion that Krueger's testimony would not have affected admissibility cannot be reconciled with that ruling.

Exhibit 904 was similarly tied to the central merits. It contained Krueger's contemporaneous direction that a code could be billed if a provider performed the work and documented it, but could not be billed without supporting notes and documentation. *Id.*, Page ID 4750–51. Counsel proffered that Krueger would explain KAC's reconciliation process and instruction that the provider be the source of documentation before billing. *Id*. The government's hearsay objections do not answer the loss of live testimony from the author and participant, nor do they establish that every favorable subject was cumulative.

The Response's final contention—that testimony from Elrod and Krueger probably would have incriminated Mr. Bregenzer—confirms their importance. ECF No. 419, Page ID 6346. The government relies on selected unsworn interview characterizations: that Elrod said Bregenzer pressured her about counseling and that Krueger said he resisted financially difficult changes. *Id*. Those statements made the witnesses central credibility witnesses whose explanations and cross-examination mattered; they do not erase the favorable compliance testimony and authentication proffered by the defense. A witness can provide mixed testimony and still be material. The government's prediction of adverse testimony cannot substitute for the jury's assessment of live testimony on both sides of the disputed record.

The prejudice extended across both charged schemes. The government's case used KAC communications and insider testimony to prove a common agreement, operational control, knowledge, and unlawful purpose. The missing testimony concerned those same subjects, including who controlled clinical decisions, billing and credentialing, what compliance measures existed, and what Mr. Bregenzer knew. If the Court of Appeals determines that the intervention, blanket invocations, and evidentiary consequences denied a meaningful opportunity to present

that defense, a new trial would be required on Count 14 as well as the health-care-fraud counts. That is qualifying relief under § 3143(b)(1)(B) and satisfies *King*.

**CONCLUSION**

The government concedes that Mr. Bregenzer is neither a flight risk nor a danger and does not claim that his appeal was taken for delay. *Singh* establishes instructional error, *Clay* confirms that prejudice from the same error can be close, and the trial objection makes the preservation question materially stronger than the records in *Clay* and *Howard*. Independently, the witness issue presents a close, preserved, all-count question supported by the government's advance preparation, its earlier knowledge of the counsel relationships, the request for question-by-question invocation, the Court's assurance that the issue was preserved, the contrary post-trial factual finding, and the concrete loss of testimony and evidence. Mr. Bregenzer respectfully requests that the Court grant the motion, continue his release on the existing conditions, stay execution of the custodial sentence, and stay the November 3, 2026 surrender date pending disposition of Sixth Circuit Case No. 26-5667.

Respectfully submitted,

*s/ Ronald W. Chapman II*
Ronald W. Chapman II, Esq., LL.M.
MI Bar No. P73179
(Admitted Pro Hac Vice)
456 E. Milwaukee Avenue
Detroit, Michigan 48202
Telephone: (346) 242-7626
ron@chapmanandassociates.com

*Counsel for Defendant Michael Bregenzer*

**CERTIFICATE OF SERVICE**

I certify that on September 9, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notice of the filing to all counsel of record.

s/ *Ronald W. Chapman II*
Ronald W. Chapman II, Esq., LL.M.