**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>**Plaintiff,**<br><br>**V.**<br><br>**JOSE ALZADON, M.D. and MICHAEL BREGENZER,**<br>**Defendants.** | **CRIM. NO. 5:23-09-KKC-MAS**<br><br>**OPINION AND ORDER** |

***** *** *****

This matter is before the Court on motions for bond pending appeal filed by defendants Michael Bregenzer (R. 417) and Jose Alzadon. (R. 426). For the following reasons, the Court will deny both motions.

## I. Background

Defendant Bregenzer was the CEO and majority owner of Kentucky Addiction Centers (KAC), a group of opioid addiction treatment clinics in Kentucky. Defendant Vanhoose was a billing manager at KAC. Defendant Dr. Alzadon was a licensed medical doctor who worked at KAC.

KAC billed insurance companies and Medicare and Medicaid for treatment provided at the clinics. Medical billing involves inputting certain codes that signify to the payor what medical services were provided. The government presented evidence of three kinds of fraudulent billing by KAC: 1) KAC "upcoded," meaning it billed under medical codes that indicated it provided more medical services than it actually provided; 2) KAC billed for medical services it did not provide at all like counseling for smoking cessation; and 3) KAC

represented to the payor that health care services were provided by Dr. Ricardo Alzadon when they were actually performed by his son, defendant Dr. Jose Alzadon.[1] The government presented evidence that KAC engaged in the third kind of fraudulent billing because KAC representatives believed defendant Dr. Alzadon was not credentialed to bill certain insurers.

The government also presented evidence that doctors must register with the United States Drug Enforcement Agency ("DEA") to obtain a unique identification number that allows them to prescribe a controlled substance like Suboxone. Federal law prohibits a person from using another person's DEA identification number to prescribe a controlled substance like Suboxone. 21 U.S.C. § 843(a)(2). When doctors prescribe medications electronically, they must go through a dual-factor verification. First, they must log into the system by entering a password. For the second factor, doctors can use an electronic prescribing "token." (R. 251 Tr. Terry 76.) When a doctor sends a prescription, an authentication code appears on the token, which the doctor must enter to prove that the physician has authorized the prescription. The authentication code must be entered to prescribe the medication. (R. 251 Tr. Terry 85-86.) The defendants were charged with conspiring to use Dr. Ricardo's DEA identification number and token to distribute Suboxone.

After a three-week trial, the jury found the defendants guilty of one count of conspiring to commit health care fraud, eight counts of health care fraud, and one count of conspiring to unlawfully distribute a controlled substance through the use of another person's DEA registration number. Defendants Alzadon and Vanhoose were also found guilty of two counts of aggravated identity theft for using, in connection with health care

[1] To distinguish defendant Dr. Jose Alzadon from his father, the Court will refer to the father as Dr. Ricardo in this opinion.

fraud, Dr. Ricardo's National Provider Identification (NPI) number, a unique number assigned to each health care provider. (R. 256 Tr. 194-95; R. 251 Tr. 61.)

The Court sentenced Bregenzer to a prison term of 48 months on each count of conviction, to run concurrently, for a total prison term of 48 months. (R. 405 Judgment.) The Court sentenced Alzadon to a prison term of 36 months on each health care fraud count, all to run concurrently; 24 months on each identity theft count, to run concurrently with each other and consecutive to the other counts; and 36 months on the controlled substance count to run concurrently, for a total prison term of 60 months. (R. 337 Judgment.) Both defendants have been ordered to report to their designated Bureau of Prison facility on January 5, 2027. Both now move for bond pending appeal pursuant to 18 U.S.C. § 3143(b).

## II. Analysis

As relevant here, Section 3143(b) requires a defendant seeking bond pending appeal to prove 1) "by clear and convincing evidence" that the defendant is "not likely to flee or pose a danger to the safety of any other person or the community if released"; 2) "the appeal is not for the purpose of delay"; and 3) the appeal "raises a substantial question of law or fact likely to result in" a new trial or reversal.

The government does not argue that either Bregenzer or Alzadon presents a flight risk or danger to the community. Nor does it argue that the purpose of either Bregenzer's or Alzadon's appeal is delay. The Court sees no evidence of flight risk or danger as to either defendant in the record before it. Nor can the Court find that either appeal is for purposes of delay. Accordingly, the issue is whether these defendants have raised a substantial question of law or fact in their appeals that is likely to result in a new trial or reversal.

An appeal raises a substantial question when it presents a "'close question or one that could go either way" and the question "is so integral to the merits of the conviction that

it is more probable than not that reversal or a new trial will occur if the question is decided in the defendant's favor." *United States v. Pollard*, 778 F.2d 1177, 1182 (6th Cir. 1985) (citing *United States v. Powell*, 761 F.2d 1227, 1233–34 (8th Cir. 1985)). The statute does not require that the Court find it committed reversible error. *Id.* at 1181-82.

**A. Bregenzer's motion**

Bregenzer argues that his appeal raises two substantial questions of law. First, he argues that the jury instructions incorrectly defined the *mens rea* requirement for health care fraud under 18 U.S.C. § 1347 pursuant to *United States v. Singh*, 147 F.4th 652 (6th Cir. 2025), a case decided after the trial of this matter. Second, he argues that the Court permitted witnesses Trouper Krueger and Kristi Elrod to invoke their Fifth Amendment protections against self-incrimination without first determining whether the invocation was appropriate for each question that defense counsel intended to ask them.

As to the first question, health care fraud requires that a person "knowingly and willfully" execute the scheme to defraud. 18 U.S.C. § 1347(a). Here, the Court instructed the jury that an act is done "knowingly and willfully" if it is done "voluntarily and intentionally, and not because of mistake or some other innocent reason." (R. 224 Instruction No. 13 at p. 19.) After the trial, however, the Sixth Circuit determined that, while "knowingly" requires "only proof of knowledge of the facts that constitute the offense," something more is required of "willful" criminal conduct. *Singh*, 147 F.4th at 658. "[I]n order to establish a 'willful' violation of a statute, the Government must prove that the defendant acted with knowledge that his conduct was unlawful." *Id.* (internal quotations and citation omitted).

This Court used the Sixth Circuit pattern instructions, which did not require that the government prove the defendant acted with the knowledge that his conduct was

unlawful. Thus, pursuant to *Singh*, the instructions "failed to convey the scienter that the government must prove to secure a conviction under 18 U.S.C. § 1347." *Id.* at 659.

The government argues that Bregenzer invited this error by submitting the pattern instruction that the Court ultimately used and then by failing to object to it at the Court's instruction conference. If the "invited-error doctrine" applies, appellate review of the issue is foreclosed unless "the interests of justice demand otherwise." *United States v. Clay*, 162 F.4th 757, 765 (6th Cir. 2025) (quoting *United States v. Barrow*, 118 F.3d 482, 491 (6th Cir. 1997)). "Whether to entertain the challenge is 'left largely to the discretion of the appellate court.'" *Id.* (quoting *Barrow*, 118 F.3d at 491).

Any review that the appellate court does decide to undertake "is limited to the search for 'plain error.'" *Id.* (quoting *United States v. Montgomery,* 998 F.3d 693, 698 (6th Cir. 2021)). Under that standard, the defendant must show "(1) an error, (2) that is plain, (3) that affects his substantial rights, and (4) that 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)). "Satisfying all four prongs of the plain-error test 'is difficult.'" *Greer v. United States*, 593 U.S. 503, 508 (2021) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)).

The Court need not resolve whether the invited error doctrine applies to the health care fraud instruction given here. This is because Bregenzer was not found guilty of only health care fraud. He was also found guilty of conspiring to unlawfully distribute a controlled substance by using another person's DEA registration number. The Court sentenced him to 48 months on that charge alone. The error in the health care fraud instruction does not affect Bregenzer's conviction for conspiring to unlawfully distribute controlled substances. Accordingly, "the reason for allowing bail pending appeal, that a

defendant should not be imprisoned under a legally erroneous sentence, disappears." *United States v. King*, 126 F.4th 440, 442 (6th Cir. 2025) (citation omitted).

Bregenzer argues that he has also raised a substantial question of law or fact likely to result in a reversal or new trial of his controlled substance conviction. He argues that the Court erred in permitting witnesses Trouper Krueger and Kristi Elrod to invoke their Fifth Amendment rights without requiring them "to take the stand and answer individualized questions to invoke the privilege." (R. 417 Mem. 10.) Krueger and Elrod were both employed by KAC.

As the Court explained in ruling on the motions for new trial, the government concluded that these witnesses faced potential criminal liability after interviewing them during its investigation. Accordingly, after the defendants indicated they would call Krueger and Elrod to testify, the government requested that the Court ensure that these witnesses were advised by counsel of their Fifth Amendment rights. (R. 263 Tr. 271-289.)

During the government's investigation, Krueger was represented by attorney Anna Whites, who was also KAC's counsel. At trial, the government raised an issue as to whether Whites had a conflict in representing both KAC and Krueger. (R. 263 Tr. 279-80.) The Court conducted an inquiry with Whites outside the presence of the jury. (R. 267 Tr. 3.) Whites stated that she did indeed have a conflict that prohibited her from representing Krueger at trial. Accordingly, the Court appointed attorney Christopher Spedding to represent Krueger. (*Id*. at 3-4.)

As to Elrod, she had no counsel. Accordingly, the Court appointed attorney Jerrod Beck to meet with her to determine if she wanted counsel and, if so, to advise her regarding her potential testimony and Fifth Amendment rights. (R. 264 Tr. 73.)

The Court directed that a packet of relevant materials be delivered to attorneys Beck and Speeding. (R. 263 Tr. 279, 286-87.) After giving the attorneys an opportunity to

review the materials and consult with their clients, the Court then conducted an inquiry with attorneys Spedding and Beck outside the presence of the jury.

Attorney Beck advised the Court that Elrod had accepted legal representation and that, after consulting with Beck, she intended to invoke her Fifth Amendment right against self-incrimination. (R. 265 Tr. 3.) Likewise, Spedding stated that he had advised Krueger to invoke his Fifth Amendment rights against self-incrimination as to any questions asked of him. (R. 267 Tr. 5, 10-11.)

Bregenzer's counsel voiced concern about potential prejudice to the defendants if Elrod invoked the Fifth Amendment repeatedly in front of the jury. But Bregenzer's counsel rejected the government's suggestion that, to minimize any prejudice to the defendants, Elrod take the stand outside the presence of the jury to answer the questions. (R. 264 Tr. 157.) The Court agreed to put Elrod on the stand in front of the jury but stated it would not allow defense counsel to go "question by question by question." (*Id.*) Accordingly, Alzadon's attorney called Elrod to the stand in front of the jury. She answered her name, but when asked if she worked at KAC, she invoked the Fifth Amendment, and no further questions were asked. (*Id.* at 167.) The following day, Bregenzer's counsel reversed course, requesting that the Court call Krueger to the stand *outside* the presence of the jury to invoke his Fifth Amendment rights. (R. 267 Tr. 5-6.) The Court did so, and Krueger invoked his Fifth Amendment rights. (R. 266 Tr. 17-18.)

Bregenzer argues that the Court should have conducted an inquiry regarding every question that the government intended to ask Elrod and Krueger to determine if they faced potential criminal liability for each question. In *Davis v. Straub*, however, the Sixth Circuit stated there is "no rule proscribing the blanket assertion of the privilege against self-incrimination." 430 F.3d 281, 288 (6th Cir. 2005). A blanket assertion is appropriate "in instances where the witness has a clear entitlement to claim the privilege." *In re Flint*

*Water Cases*, 53 F.4th 176, 210 (6th Cir. 2022) (quoting *United States v. McAllister*, 693 F.3d 572, 583–84 (6th Cir. 2012)). "In such a case, the reason behind the rule [that a defendant must take the stand and answer individualized questions in order to invoke his Fifth Amendment privilege] does not apply because the court already knows that 'reasonable cause' to invoke the privilege exists." *Id* (quoting *McAllister*, 693 F.3d at 583).

Here, both Krueger and Elrod were clearly entitled to claim the privilege. Bregenzer himself has stated, "witness after witness" implicated Krueger in the scheme to defraud and "the Government recast Krueger as the scheme's hidden architect." (R. 271 Response 7, 8.) Moreover, at the time the government raised its concerns regarding these witnesses testifying, the Court had already made findings under *United States v. Enright*, 579 F.2d 980 (6th Cir. 1978) that Krueger and Elrod were both unindicted coconspirators. (R. 263 Tr. 267-73.) Finally, independent counsel appointed by the Court advised these defendants to invoke their Fifth Amendment rights rather than testify.

The Court stated in its opinion on the defendants' motion for new trial that "no defendant requested that the Court conduct a question-by-question inquiry of Krueger or Elrod." (R. 320 at 14.) Bregenzer's counsel argues in this motion that he did make such a request at trial. The record is less than clear on that, [2] but even if he did, it does not change

---

[2] Regarding whether defense counsel did request the question-by-question inquiry, Bregenzer cites a portion of the transcript dealing with only Elrod, not Krueger. (R. 422 Reply at 8.) The record reveals that Bregenzer rejected Elrod taking the stand both in front of the jury and outside the presence of the jury to invoke the Fifth Amendment "over and over again." (R. 264 Tr. 147.) As to invoking the Fifth Amendment repeatedly in front of the jury, Bregenzer's counsel stated "that would be incredibly prejudicial to the defense." (R. 264 Tr. 147.) The government suggested that, as in other cases, the witness take the stand outside the presence of the jury to go through the questions to minimize the prejudice to the defendants. (*Id.* at 157.) Mr. Chapman rejected that suggestion, stating that would be appropriate only to determine if a witness intended to take the Fifth Amendment. He argued that procedure would not be appropriate where, as here, the witness had already indicated her intent to plead the Fifth to questions. (*Id.* at 4565.)

Bregenzer's counsel at one point stated, however, that, "as prejudicial as that may be," he may have to put Elrod on the stand to invoke the Fifth Amendment in front of the jury because he thought the government would remark in closing on Bregenzer's failure to call Elrod as a witness. (*Id.* at 148-49.) He did not indicate that he would need to call Elrod to the stand to invoke the Fifth

the outcome of this issue. Krueger and Elrod were both clearly entitled to claim the privilege against self-incrimination. Thus, the question-by-question inquiry was not necessary, whether or not Bregenzer's counsel requested it. This is not a close call.

Moreover, even if a question-by-question inquiry were necessary here, Bregenzer has not explained how the Court's failure to conduct one would likely result in a reversal or a new trial if this issue is decided in his favor. He does not assert that, had the Court conducted the inquiry, it would have compelled Elrod or Krueger to testify or that, even if the two witnesses had been compelled to testify, the testimony would have been exculpatory to him. Bregenzer points out that, at one point during the trial, the Court accepted

---

Amendment on a question-by-question basis to preserve the issue. Calling Elrod to the stand to invoke the Fifth Amendment for this purpose became unnecessary because the Court stated that it would be unethical for the government to comment in its closing on Bregenzer's failure to call Elrod, and the AUSU stated the government would not make any such comment in closing. (*Id.* at 149.) The Court explicitly instructed the government that it could not do so. (*Id.*)

Bregenzer's counsel then indicated that he may have to put Elrod on the stand to preserve another issue: Whether the government was insinuating Elrod's culpability only because it wanted to ensure she invoked her Fifth Amendment rights instead of testifying. (Id. at 156.) Mr. Chapman stated, "If I'm required to put her on the stand and have her invoke for every question unless the Court says I'm not going to allow it, then that's what I'll ask for. So we're asking for it, but we understand the prejudice behind it." *Id.* at 156. Again, however, calling Elrod to the stand to invoke the Fifth Amendment for this purpose became unnecessary because the Court informed Mr. Chapman that he had adequately preserved the issue. (*Id.*)

It was at this point that the government suggested that a question-by-question inquiry occur outside the presence of the jury in order to avoid any prejudice to the defense (id. at 157), but Bregenzer rejected that suggestion. (*Id.*)

The Court did agree to allow the defendants to call Elrod to the stand in front of the jury to invoke the Fifth Amendment but told the defendants it would not permit "a hundred questions with the same answer." *Id.* Alzadon's attorney then called Elrod to the stand. She answered her name, but when asked if she worked at KAC, she invoked the Fifth Amendment (*Id.* at 167.)

The following day, after Spedding indicated that Krueger would also invoke the Fifth Amendment if called to testify, the Court asked defense counsel if they wanted Krueger to invoke his Fifth Amendment rights in front of the jury as they had requested with Elrod. (R. 267 Tr. 5.) Bregenzer's counsel requested that, unlike Elrod's questioning, Krueger's questioning occur outside the presence of the jury. (R. 267 Tr. 5-6.) The Court then ordered Krueger to the witness stand outside the presence of the jury, and Chapman asked him if he worked at KAC to which Krueger invoked the Fifth Amendment. (R. 266 Tr. 17-18.) Defense counsel asked no further questions, and the Court excused Krueger. (*Id.* at 18.)

Bregenzer's word that he *could* show that Krueger's and Elrod's testimony would be favorable, material and noncumulative. (R. 264 Tr. 77.) The Court made that statement in explaining that it would ensure that the witnesses were adequately advised of their Fifth Amendment rights before testifying. (*Id.*) The Court never found that Bregenzer *had* shown that the witnesses' testimony would be favorable, material and noncumulative.

Bregenzer makes no argument at all as to what Elrod's unavailability meant for his defense. As to Krueger, he argues here, as he did in his motion for a new trial, that, without Krueger, he could not admit certain potential exhibits. (R. 417 at 14-29.) In this motion, he focuses on four of them: Exhibits 899, 900, 903, and 904.

As the Court explained in its ruling on the motion for new trial, Court "painstakingly" reviewed each of the proffered exhibits during trial. The Court has again reviewed the four documents that are the focus of this motion. Documents 899 and 904 are arguably exculpatory as to Krueger, but none of them sheds any light on Bregenzer's culpability for the charges against him, much less exculpate him of the controlled substance charge or any other charge.

Bregenzer argues in this motion that the proffered exhibits "concerned" his "knowledge across both charged schemes." (R. 417 Mem. at 17.) The documents do not provide any evidence that is inconsistent with the evidence of Bregenzer's knowledge that was admitted at trial. Bregenzer's knowledge of the criminal conduct is not discussed in any of the documents. Further, the four proffered exhibits have nothing to do with the conviction for conspiring to unlawfully distribute a controlled substance using another person's DEA registration number. Thus, the fact that none of these documents was presented to the jury will not likely result in a reversal or new trial on the controlled substance charge.

Bregenzer makes a brief related argument that his appeal raises a substantial

question as to whether the government interfered with his due process right to present a defense by the manner and timing in which it addressed its concerns about Krueger and Elrod testifying. This does not raise a substantial question.

As the Court explained in its prior opinion, in *Davis v. Straub*, 430 F.3d 281, 287 (6th Cir. 2005), a similar procedure was employed to that employed by the government and this Court. There, the prosecutor requested a sidebar with the judge and informed the court that a witness called by the defense was a suspect. The government requested that the witness be informed of his Fifth Amendment rights before he testified. The judge questioned the witness and appointed independent counsel to advise him of his rights. The Sixth Circuit determined that "neither the prosecutor's nor the judge's conduct was unconstitutional, especially considering the ethical obligation, imposed on prosecutors by the ABA's model guidelines, to:

> advise a witness who is to be interviewed of his or her rights against self-incrimination and the right to counsel whenever the law so requires. It is also proper for a prosecutor to so advise a witness whenever the prosecutor knows or has reason to believe that the witness may be the subject of a criminal prosecution.

*Id*. at 287 (quoting ABA Standards for the Administration of Criminal Justice § 3–3.2(b)).

Bregenzer points out that, at trial, the government had a package of relevant materials prepared for the court-appointed counsel to Krueger and Elrod to review. He argues that this shows the government anticipated the Fifth Amendment issue with these witnesses and could have raised it before trial. But the government did raise the issue of potential Fifth Amendment issues for defense witnesses at a pretrial conference. After doing so, the Court explained it would appoint standby counsel to advise the witnesses of their Fifth Amendment rights, as it did. (R. 297 at 47-48.) Thus, all parties had advance notice of the issue and the Court's proposed resolution.

Further, again and importantly, Bregenzer has not explained how the testimony of either Krueger or Elrod would have been exculpatory to him on any charge, including the controlled substance charge.

**B. Alazadon's motion**

In his motion, Alzadon adopts the arguments made by Bregenzer. For the reasons, discussed, those arguments do not establish a substantial question of law or fact likely to result in a new trial or reversal under 18 U.S.C. § 3143(b).

Alzadon also argues that the Court should order his release pending appeal because of "unique constitutional concerns related to defense witnesses." (R. 426 Motion at 6.) In support of this argument, however, Alzadon simply cites his appellate brief attached to his motion.

In that brief, Alzadon raises the argument that the Court has already addressed regarding the propriety of Krueger and Elrod invoking their Fifth Amendment rights. As the Court has explained, this does not raise a substantial issue likely to result in reversal or a new trial. For the reasons discussed, the manner by which these witnesses invoked their Fifth Amendment rights does not raise such an issue. Further, Alzadon does not explain how either witness would have provided any evidence relevant to his defense. In his appellate brief, in explaining the relevance and materiality of these witnesses to his defense, he states only that the witnesses were mentioned "hundreds of times" and that Krueger was mentioned in opening statements at trial. (R. 426-1 Brief at 17.)

In his appellate brief, Alzadon also argues that there was insufficient evidence to support his convictions. The Court addressed this issue at length in its opinion on Alzadon's motion for a new trial. (R. 320 Opinion at 22-29.) For the reasons discussed in that opinion, this does not raise a substantial issue of law or fact likely to result in reversal or a new trial.

Finally, in his appellate brief, Alzadon raises an issue regarding the reasonableness of his sentence. Release pending appeal may be appropriate if the appeal raises a substantial question of law or fact likely to result in a sentence that does not include imprisonment or that would impose a term of imprisonment less than the expected duration of the appeal process. 18 U.S.C. § 3143(b)(1)(B). Alzadon does not argue in his brief that he should receive no prison sentence or one that that is less than the expected duration of his appeal. The Court has no basis to find that his appeal raises a substantial question likely to result in that outcome.

In this motion, Alzadon also argues that the Court should order his release pending appeal under 18 U.S.C. § 3145(c). The statute provides that a person detained pending appeal may be ordered released, under appropriate conditions, "if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate." Alzadon points out that he provides 24-hour treatment to his mother, who has been under hospice care since August 2025. He states he provides care consistent with his training as a medical doctor and that she could not otherwise receive this level of "one-on-one full-time care."

The Court remains sympathetic to Alzadon's circumstances. "Courts generally agree that the term 'exceptional reasons' is limited to those situations which are 'out of the ordinary,' 'uncommon,' or 'rare.'" *United States v. Miller*, 568 F. Supp. 2d 764, 774 (E.D. Ky. 2008) (citing *United States v. DiSomma*, 951 F.2d 494, 497 (2d Cir. 1991)). "Additionally, the cases establish that mere personal reasons, including caring for a family or gainful employment are not 'exceptional.'" *Id. see also United States v. Lippold*, 175 F.Supp.2d 537, 540 (S.D.N.Y. 2001) (noting that caring for family members with "unusual" health problems does not "rise to the level of 'exceptional reasons'"). Courts have noted that, "in most instances, incarceration imposes a great burden upon a defendant's family and finances."

*Miller*, 568 F. Supp. 2d at 774. "Incarceration regrettably inflicts family hardship on many, if not most, defendants who appear before this Court. Rather than personal family hardships being 'out of the ordinary,' 'uncommon' or 'rare'". . . personal family hardships are very common and occur in a great number of cases before this court." *United States v. Burnett*, 76 F. Supp. 2d 846, 849 (E.D. Tenn. 1999).

Accordingly, the Court will deny Alzadon's motion for bond pending appeal. Nevertheless, by prior order, the Court has granted Alzadon an extension of his self-report date to January 5, 2027, which will allow him more time to make arrangements for the care of his mother.

**III. Conclusion**

For all these reasons, the Court hereby ORDERS that the motions for bond pending appeal filed by defendants Alzadon (R. 426) and Bregenzer (R. 417) are DENIED.

* * * * *

This 2nd day of November, 2026.

**Signed By:**
***Karen K. Caldwell*** KKC
**United States District Judge**